**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE HON. JENNIFER CHOE-GROVES, JUDGE**
-------------------------------------------------------------------- X

SCOTTSDALE TOBACCO, LLC.                     :
                                             :
       **Plaintiff,**                           :
                                             :
       *v.*                                    :      **Court No. 24-00022**
                                             :
UNITED STATES,                               :
                                             :
       **Defendants.**                          :
-------------------------------------------------------------------- X


## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

NEVILLE PETERSON LLP
*Counsel for Plaintiff*

John M. Peterson
Richard F. O'Neill
Patrick B. Klein
Sanzida Talukder
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated: August 13, 2025

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT.........................................................................1

STATEMENT OF FACTS ................................................................................................. 2

STANDARD OF REVIEW ................................................................................................ 6

ARGUMENT ..................................................................................................................... 7

I.      Scottsdale's Drawback Entry Satisfies 19 U.S.C. § 1313(j)(2) Requirements for
Substitution Unused Merchandise Drawback. ..............................................................7

      A.     Requirements for Substitution Unused Merchandise Drawback, 19 U.S.C.
§ 1313(j)(2). ..............................................................................................7

      B.     Plaintiff Imported Tax Paid Paper Wrapped Cigarettes. .....................................10

      C.     Plaintiff Exported Substitutable Paper-Wrapped Cigarettes.................................11

      D.     The Imported and Exported Cigarettes are Both Classified Under Subheading
2404.20.80, HTSUS. ..................................................................................13

      E.     Scottsdale "Possessed" the Substituted Merchandise Prior to Exportation. ..........14

      F.     The Exported Cigarettes Were Not "Used" Before Exportation. .........................16

      G.     The Drawback Claim Was Timely Filed. .............................................................16

      H.     Plaintiff is Entitled to Drawback.....................................................................17

II.     In the Alternative, Plaintiff's Drawback Entry was "Deemed Liquidated" and a
Drawback Refund Must be Paid. ...........................................................................17

CONCLUSION...................................................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby* 477 U.S. 242 (1986) ............................................................ 6

*Avia Group Int'l v. LA Gear Cal. Inc.* 853 F. 2d 1557 (Fed. Cir. 1988) ...................... 6

*BFGoodrich Co. v. United States,* 16 C.I.T. 333 (1992) ............................................. 15

*Central Soya Co. v. United States*, 15 C.I.T. 105 (1991) ........................................... 15

*Dal-Tile Corp. v. United States*, 829 F. Supp. 394 (Ct. Intl. Tr. 1993) ...................... 18

*Ford Motor Co. v. United States,* 44 F. Supp. 3d 1330 (2015) ................................... 22

*Geo. Wm. Rueff, Inc. v. United States*, 13 Cust. Ct. 232 (1944) ................................. 22

*Goodman Mfg. L.P v. United States,* 69 F.3d 505 (Fed. Cir. 1995). ............................. 6

*Guess? Inc. v. United States*. 752 F. Supp. 463 (Ct. Int'l Trade 1991) ......................... 8

*Int'l Cargo & Surety Ins. Co. v. United States*, 15 C.I.T. 541 (1991). ........................ 18

*Int'l Trading Co. v. United States*, 281 F. 3d 1268 (Ct. Intl. Tr. 2002) ....................... 18

*Invotech Aviation v. United States*, 21 C.I.T. 1392 (1997). .......................................... 6

*King Maker Marketing LLC v. United States*, Slip Op. 25-58 (May 15, 2025) ........................... 16

*National Association of Manufacturers v. Department of the Treasury,* 10 F.4th 1279
 (Fed. Cir. 2021) ............................................................................................................. 6

*National Association of Manufacturers v. United States Department of the Treasury*,
 2020 Ct. Int'l Tr. LEXIS 68* (2020) ....................................................................... 5, 22

*Performance Additives, LLC v. United States*, 705 F. Supp. 3d 1385 (Ct. Int'l Tr. 2024) ....... 6, 23

*Pillsbury Co. v. United States*, 293 F. Supp. 2d 1351 (Ct. Int'l Tr. 2003) ................... 9

*Spirit Aerosystems Inc. v. United States*, 680 F. Supp. 3d 1329 (Ct. Int'l Tr. 2024) .................. 9

*St. Paul Fire & Marine Ins. Co. v. United States*, 6 F.3d 763  (Fed. Cir. 1993). ......... 18

*Tandon Corp. v. United States*, 16 C.I.T. 952 (1992) ................................................... 8

*Texport Oil Co. v. United States*, 185 F.3d 1291 (Fed. Cir. 1999) .............................. 9

*United States v Champion Coated Paper Co*., 22 C.C.P.A. 414 (1934) ....................... 22

*Universal Electronics Inc. v. United States*, 112 F.3d 488 (Fed. Cir. 1997) ............... 6

**Statutes**

19 U.S.C. § 1313 ...................................................................................................... passim

19 U.S.C. § 1500 ............................................................................................................. 18

19 U.S.C. § 1501 ............................................................................................................. 22

19 U.S.C. § 1504 ...................................................................................................... passim

19 U.S.C. § 1504 ............................................................................................................. 22

19 U.S.C. § 81c .......................................................................................................... 4, 12

26 U.S.C. § 5701 ............................................................................................................. 11

26 U.S.C. § 5723 ............................................................................................................... 4

26 U.S.C. § 5761 ............................................................................................................... 4

26 U.S.C. § 5763 ............................................................................................................... 4

28 U.S.C. § 1581 ............................................................................................................... 6

28 U.S.C. § 2639 ............................................................................................................... 6

Trade Facilitation and Trade Enforcement Act of 2015, Pub. L. 114-125, 130 Stat. 122
 (2016) .............................................................................................................................. 9

**Other Authorities**

*Customs Headquarters Ruling 229245 of June 14, 2022.* ........................................... 14

S. Rep. 108-28 (2003). .................................................................................................... 22

S. Rep. 95-778, 95th Cong. 2nd Sess. 1, 32 (1978), reprinted in 1978 U.S.C.C.A.N. 2211, 2243. ................................................................................................................................. 18

**Regulations**

19 C.F.R. § 146.44 ............................................................................................................... 4, 13
19 C.F.R. § 190.81 ................................................................................................................... 21
19 C.F.R. § 190.92 .............................................................................................................. 19, 21
19 C.F.R. § 191.92 ................................................................................................................... 19
27 C.F.R § 44.181 ...................................................................................................................... 4
27 C.F.R § 44.61a. ..................................................................................................................... 4

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE HON. JENNIFER CHOE-GROVES, JUDGE**
-------------------------------------------------------------------- X
SCOTTSDALE TOBACCO, LLC.                                          :
                                                                 :
      Plaintiff,                   :
                                                                 :
       *v.*                     :          **Court No. 24-00022**
                                                                 :
UNITED STATES,                                                   :
                                                                 :
      Defendants.                   :
-------------------------------------------------------------------- X

### <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>

In accordance with Rules 7 and 56 of the Rules of the United States Court of International 56 ("USCIT R."), Plaintiff, Scottsdale Tobacco, LLC. ("Scottsdale"), respectfully moves this Court for an order granting summary judgment in its favor, and awarding the relief sought in the Complaint. *See* ECF 5. Specifically, Plaintiff submits that Defendant, United States, improperly denied Plaintiff's 19 U.S.C. § 1313(j)(2) claim for substituted unused merchandise drawback of Federal Excise Taxes ("FET") paid on imports of certain paper-wrapped cigarettes classified under subheading 2404.20.8000, Harmonized Tariff Schedule of the United States ("HTSUS"). The drawback claim was based on the subsequent exportation of a like quantity of paper-wrapped cigarettes also classified under subheading 2404.20.8000, HTSUS, within the time provided by law.

Importation of the designated merchandise is established by twenty-three (23) Type 06 consumption entries of cigarettes, entered at the Port of Port Everglades, Florida, on various dates between March 16, 2018, and November 6, 2018. The substituted merchandise was exported between December 26, 2018, and February 11, 2019, by means of four (4) admissions of paper-

wrapped domestically-made cigarettes into Foreign Trade Zone ("FTZ") 35 located in Port Everglades, Florida, assigning them "zone restricted" (export only) status.

Plaintiff complied with all requirements for claiming drawback under 19 U.S.C. § 1313(j)(2). It exported substitutable cigarettes after it had imported the "designated" tax paid cigarettes. It timely filed its claim for drawback within the five-year period from date of importation specified in the statute. Plaintiff had "possession" of the substituted merchandise prior to the time it was exported. It timely filed its drawback entry and completed its drawback claim. Judgment should be awarded to Plaintiff, directing the appropriate Customs officer to reliquidate Plaintiff's drawback claim with full allowance of drawback.

In the alternative, this Court should enter summary judgment on Plaintiff's drawback claim, finding it was "deemed liquidated" as filed, one-year after filing, pursuant to 19 U.S.C. § 1504 (a)(2)(A), insofar as no timely notice of extension to liquidation for entry had been given by United States Customs and Border Protection ("CBP or Customs").

## STATEMENT OF FACTS

In accordance with USCIT R. 56.3, Plaintiff's Statement of Material Facts Not in Dispute is submitted herewith and incorporated by reference. The facts material to this dispute are established by official government records and are not subject to dispute.

On various dates between March 16, 2018, and November 12, 2018, Plaintiff imported Canadian-origin paper-wrapped cigarettes into the United States for consumption, and paid FET owed thereon. The imports were made cover of twenty-three (23) Type 06 entries for consumption filed at the Port of Port Everglades, Florida, between March 16, 2018, and November 12, 2018, and these Type 06 entries are evidence that a withdrawal occurred involving cigarettes from FTZ 35 for consumption. *See* Plaintiff's ("Pl.'s") 56.3 Statement at ¶1. The imported cigarettes, which were designated as the basis for the drawback claim which is the subject of this action had

2

previously been imported into the United States and transported in bond to FTZ 35, where they were admitted with "Non-Privileged foreign" zone status. Plaintiff acted as the Importer of Record for the entries, since it held a Tobacco Importer's Permit issued by the Department of Treasury's Alcohol and Tobacco Tax and Trade Bureau ("TTB"). After entering the goods for consumption, Scottsdale then sold them to various wholesalers who held TTB-issued Tobacco Reseller's permits.

The cigarettes imported under cover of the entries were designated as the basis for Plaintiff's 19 U.S.C. § 1313(j)(2) drawback entry no. H52-0005246-3, which is the subject of this action. The imported cigarettes were classified under subheading 2402.20.8000, HTSUS, which provides for "Cigars, cheroots, cigarillos and cigarettes, of tobacco or of tobacco substitutes: Cigarettes containing tobacco; Other; paper-wrapped." Customs liquidated the import entries under this provision.

On four dates between December 16, 2018, and February 11, 2019, Plaintiff exported U.S.-origin paper-wrapped cigarettes. These cigarettes had been manufactured in a TTB-bonded manufacturing facility located on a Native American reservation in upstate New York. They were transported in bond[1] from that facility to FTZ 35 in Port Everglades, Florida, and admitted to the FTZ in "zone restricted" status, as shown on the four (4) Customs Form ("CF") 214 "Notices of Admission" filed for them.  *See* Pl.'s 56.3 Statement at ¶7.  The exported cigarettes were also classifiable under subheading 2402.20.8000, HTSUS, which provides for "Cigars, cheroots, cigarillos and cigarettes, of tobacco or of tobacco substitutes: Cigarettes containing tobacco; Other; paper-wrapped."

---

[1] As these were domestic cigarettes, a TTB bond was used to cover the goods during the transfer from New York to Florida.

The Foreign Trade Zones Act, provides in pertinent part at 19 U.S.C. § 81c:

[t]hat under the rules and regulations of the controlling Federal agencies, articles which have been taken into a zone from customs territory for the sole purpose of exportation, destruction (except destruction of distilled spirits, wines, and fermented malt liquors), or storage shall be considered to be exported for the purpose of-

(1) the drawback, warehousing, and bonding, or any other provisions of the Tariff Act of 1930, as amended, and the regulations thereunder; and

(2) the statutes and bonds exacted for the payment of drawback, refund, or exemption from liability for internal-revenue taxes and for the purposes of the internal-revenue laws generally and the regulations thereunder.

Thus, admission of the substituted cigarettes into the FTZ under "zone restricted" status constituted exportation for purposes of the drawback laws.[2]

Thus, the relevant import and export activities supporting the drawback claim which is the subject of this action all took place at FTZ 35 – withdrawal of the imported "designated" cigarettes for consumption, with payment of duty and FET, and the exportation of the substituted merchandise through admission into that facility in "zone-restricted" status.[3]

Thus, section 146.44 of the Customs Regulations, 19 C.F.R. § 146.44 provides:

§ 146.44   Zone-restricted status.

(a) General. Merchandise taken into a zone for the sole purpose of exportation, destruction (except destruction of distilled spirits, wines, and fermented malt liquors), or storage will be given zone-restricted status on proper application. That status may be requested at any time the merchandise is located in a zone, but cannot be abandoned once granted. Merchandise in zone-restricted status may not be

---

[2] The regulations of the Department of the Treasury, Alcohol and Tobacco Tax and Trade Bureau (TTB) also provide that the movement of untaxpaid cigarettes to an FTZ for exportation, or storage pending exportation, constitutes an "exportation" for tax purposes. *See* 27 C.F.R § 44.61a.

[3] Scottsdale had no choice but to admit the substituted cigarettes into the FTZ with "zone restricted" status, since they were labeled "for export only" under laws and regulations administered by TTB. *See,* 26 U.S.C. § 5723(e); 27 C.F.R § 44.181. Removing them from either the bonded manufacturing facility or the FTZ for domestic consumption would have subjected the responsible party to liability for taxes and penalties. *See* 26 U.S.C. §§ 5761-5763.

removed to Customs territory for domestic consumption except where the Board determines the return to be in the public interest.

(b) Application. Application for zone-restricted status will be made on Customs Form 214.

(c) Merchandise considered exported—(1) For Customs purposes. If the applicant desires a zone-restricted status in order that the merchandise may be considered exported for the purpose of any Customs law, **all pertinent Customs requirements relating to an actual exportation shall be complied with as though the admission of the merchandise into zone constituted a lading on an exporting carrier at a port of final exit from the U.S.** Any declaration or form required for actual exportation will be modified to show the merchandise has been deposited in a zone in lieu of actual exportation, and a copy of the approved Customs Form 214 may be accepted in lieu of any proof of shipment required in cases of actual exportation.

Emphasis added.

On February 15, 2019, Plaintiff caused to be filed with CBP's New York/Newark Drawback Center drawback entry no. H52-0005246-3, which sought payment of "substitution unused merchandise drawback" pursuant to Section 313(j)(2) of the Tariff Act of 1930, as amended 19 U.S.C. § 1313(j)(2).

Drawback entry no. H52-0005246-3 identified the imported cigarettes entered under cover of the twenty-three (23) Type 06 consumption entries as the basis of the drawback claim ("the designated merchandise"), and identified the exported merchandise admitted into FTZ 35 in "zone restricted" status as the "substituted" merchandise.

CBP did not, within one-year of the date of the filing of the drawback entry, issue to Plaintiff a notice that it was extending the drawback claim's liquidation, as provided in 19 U.S.C. § 1504(a)(2)(A).[4]

---

[4] On July 26, 2022, Customs' Automated Commercial Environment ("ACE") included a notation that the drawback entry had been "suspended." Presumably, this refers to the suspension of liquidation for drawback claims involving FET issued in *National Association of Manufacturers v. United States Department of the Treasury*, 2020 Ct. Int'l Tr. LEXIS 68* (2020). That

On October 21, 2022 – more than three and one-half years after the drawback entry was filed — CBP liquidated Drawback entry no. H52-0005246-3 "no drawback." CBP refused to pay the claim.

On April 28, 2023, Plaintiff timely protest no. 1001-23101310 tochallenge CBP's refusal to allow drawback on drawback entry no. H52-0005246-3. On January 19, 2024, CBP denied Plaintiff's protest. Plaintiff timely commenced this action by filing a summons in this Court. *See* ECF 1. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1581(a).

## STANDARD OF REVIEW

Summary judgment is appropriate under USCIT R. 56 when there is "no genuine dispute as to any material fact." *See Anderson v. Liberty Lobby* 477 U.S. 242, 249 (1986); *Avia Group Int'l v. LA Gear Cal. Inc.* 853 F. 2d 1557, 1560 (Fed. Cir. 1988); *Invotech Aviation v. United States*, 21 C.I.T. 1392, 1394 (1997). The material facts regarding the drawback claim under review are undisputed.

Pursuant to 28 U.S.C. § 2639(a)(1), Customs is presumed to have found all facts necessary to support its liquidation decision. But where, as here, there are no disputes as to material questions of fact, the "presumption of correctness" falls away and the matter resolves into a pure question of law. *See Universal Electronics Inc. v. United States*, 112 F.3d 488, 492-93 (Fed. Cir. 1997); *Goodman Mfg. L.P v. United States,* 69 F.3d 505, 508 (Fed. Cir. 1995).

---

suspension terminated in 2021 after the Federal Circuit issued its decision in *National Association of Manufacturers v. Department of the Treasury,* 10 F.4th 1279 (Fed. Cir. 2021).

Customs' ACE record also indicates that the liquidation of the drawback claim was "extended" on March 20, 2022. However, such an extension, coming for the first time after the claim had been pending for more than three years, would be neither timely nor effective under 19 U.S.C. § 1504(a)(2), and came long after all the import entries designated in the claim had been liquidated and made final. *See Performance Additives, LLC v. United States*, 705 F. Supp. 3d 1385 (Ct. Int'l Tr. 2024), appeal pending.

## ARGUMENT

**I.    Scottsdale's Drawback Entry Satisfies 19 U.S.C. § 1313(j)(2) Requirements for Substitution Unused Merchandise Drawback.**

As discussed herein, uncontradicted evidence shows that Scottsdale's drawback entry H52-0005246-3 satisfied all the requirements for claiming substitution unused merchandise drawback under 19 U.S.C. § 1313(j)(2).   Specifically, (1) the claim identifies imported designated merchandise — paper-wrapped cigarettes — on which FETs were paid; (2) it identifies subsequently exported substituted merchandise evidenced  by the admission of the merchandise into FTZ 35 in "zone restricted" status; (3) the imported "designated" and exported "substituted" merchandise were classifiable under the same eight digits tariff subheading, subheading 2402.20.80, HTSUS; (4) it "possessed" the exported substituted merchandise prior to its date of exportation; (5) the exported goods were not used in the United States prior to exportation; and (6) Plaintiff filed its drawback claim within five (5) years after the date of importation of the designated merchandise.

### A.    Requirements for Substitution Unused Merchandise Drawback, 19 U.S.C. § 1313(j)(2).

Section 313(j)(2) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1313(j)(2), provides in relevant part:

> (2) Subject to paragraphs (4), (5), and (6), if there is, with respect to imported merchandise on which was paid any duty, tax, or fee imposed under Federal law upon entry or importation, any other merchandise (whether imported or domestic), that—
>
>> (A) is classifiable under the same 8-digit HTS subheading number as such imported merchandise;
>>
>> (B) is, before the close of the 5-year period beginning on the date of importation of the imported merchandise and before the drawback claim is filed, either exported or destroyed under customs supervision; and
>>
>> (C) before such exportation or destruction—

7

(i)is not used within the United States, and

(ii)is in the possession of, including ownership while in bailment, in leased facilities, in transit to, or in any other manner under the operational control of, the party claiming drawback under this paragraph, if that party—

(I)    is the importer of the imported merchandise, or

(II)    received the imported merchandise, other merchandise classifiable under the same 8-digit HTS subheading number as such imported merchandise, or any combination of such imported merchandise and such other merchandise, directly or indirectly from the person who imported and paid any duties, taxes, and fees imposed under Federal law upon importation or entry and due on the imported merchandise (and any such transferred merchandise, regardless of its origin, will be treated as the imported merchandise and any retained merchandise will be treated as domestic merchandise);

then, notwithstanding any other provision of law, upon the exportation or destruction of such other merchandise an amount calculated pursuant to regulations prescribed by the Secretary of the Treasury under subsection (l) shall be refunded as drawback.

Created in 1984, the substitution unused merchandise drawback statute initially permitted a refund of duties where duty-paid goods were imported, and "fungible" goods were exported. The "fungibility" requirement proved subjective and difficult to administer.[5] The law was amended in 1993 to allow for the payment of drawback based on the exportation of goods which were "commercially interchangeable" with the designated imports. Again, this factor-based standard

---

[5] *See, e.g., Guess? Inc. v. United States*. 752 F. Supp. 463 (Ct. Int'l Trade 1991), vacated, 944 F.2d 855 (Fed. Cir. 1991) (CIT held that imported designated Hong Kong origin blue jeans were not "fungible" with identical jeans produced in the United States, based on subjective statement that purchasers in foreign countries preferred jeans with U.S. origin label; vacated and remanded for further fact-findings); *Tandon Corp. v. United States*, 16 C.I.T. 952 (1992) (otherwise identical flexible drives held by Customs not to be "fungible" due to subjective consumer expectation that one brand of drive failed more often than the other; summary judgment motions denied, case put down for trial).

allowed for the consideration of subjective factors and presented both Customs and the courts with interpretive difficulties.[6]

The Trade Facilitation and Trade Enforcement Act ("TFTEA") of 2015, Pub. L. 114-125, 130 Stat. 122 (2016) replaced the commercial interchangeability standard with one of classification at the eight-digit subheading level of the HTSUS.[7] This change became effective February 24, 2018. Under this standard, if the imported "designated" and exported "substituted merchandise" are classifiable under the same 8-digit tariff subheading, they are considered substitutable for drawback purposes.[8]

The TFTEA also directed Customs to promulgate regulations for calculating drawback when designated and substituted goods are subject to *ad valorem* duties and may have different values. Under these rules, Customs determines the "unit average value" for each import entry line

---

[6] *See, e.g.*, *Texport Oil Co. v. United States*, 185 F.3d 1291 (Fed. Cir. 1999) (holding the test for whether imported and exported goods are "commercially interchangeable" for drawback purposes is whether a "hypothetical reasonable competitor" would accept one product in lieu of the other for its "primary commercial purpose"); *see also Pillsbury Co. v. United States*, 293 F. Supp. 2d 1351 (Ct. Int'l Tr. 2003), aff'd, 159 Fed. Appx. 1007 (Fed. Cir. 2005) (applying "hypothetical reasonable purchaser" test to determine imported Mexican band-saw cut asparagus was commercially interchangeable with exported Washington State asparagus harvested using a hand tool).

[7] The eight-digit HTSUS classification standard for determining drawback substitutability had previously been adopted for use in the petroleum substitutes drawback statute, 19 U.S.C. § 1313(p). In addition to using eight-digit HTSUS classifications, drawback claimants may substitute merchandise on the basis of eight-digit subheadings in the Schedule B export nomenclature. Few drawback claimants use Schedule B, but it is sometimes used where the same seasonal agricultural commodity is classified in different eight-digit HTS subheadings based on the date of entry.

[8] However, if the eight-digit HTSUS subheading begins with the word "other," the goods may not be eligible for drawback on that basis. In that case, goods are eligible for drawback substitution if they are provided for in the same ten-digit "statistical" subheading of the HTSUS. However, if both the eight-digit and ten-digit subheadings begin with the word "other,," drawback is not payable. *See Spirit Aerosystems Inc. v. United States*, 680 F. Supp. 3d 1329 (Ct. Int'l Tr. 2024) (holding that language appearing at unnumbered positions in the HTS was not to be taken into account in applying the "other" "other" rule).

item and compares it to the value of the corresponding exports. Drawback is then paid on the lower of the two values. This methodology is not applicable here, because no duties were paid and the FET at issue is imposed on a specific, rather than *ad valorem*, basis. For cigarettes, the FET is a specific rate—$50.33 per 1,000 cigarette "sticks."

### B.    Plaintiff Imported Tax Paid Paper Wrapped Cigarettes.

Plaintiff's presentation—and the Court's evaluation of the relevant facts—is streamlined by the circumstance that both the importation of the designated cigarettes and the exportation of the substituted cigarettes occurred at a single location — FTZ No. 35 in Port Everglades, Florida.

Payment of the tax on the cigarettes is documented by the twenty-three (23) Type 06 consumption entries filed with Customs at Port Everglades, Florida, covering withdrawals of the imported Canadian cigarettes for consumption from FTZ 35 between March 16, and November 28, 2018. Copies of these official government entry summaries are appended at Pl.'s Rule 56.3 Statement, Exhibit ("Ex.") 1. For the Court's convenience, Ex. 6 also includes a summary of each import entry and the corresponding quantity of cigarettes imported.[9]

It is undisputed that the Canadian-origin cigarettes were imported under cover of the relevant entries and were classified in entry and liquidation as "paper wrapped cigarettes" under subheading 2402.20.80, HTSUS. The goods were not assessed with duties—the entry summaries reflect the goods were entered as "originating" products of Canada pursuant to the North American

---

[9] This summary, having been prepared for purposes of the litigation by counsel, would likely not be admissible at trial under Federal Rule of Evidence ("FRE") 1006. It is offered here merely as a demonstrative to aid the Court in considering this motion for summary judgment. In any event, the summarized documents, have been submitted to the Court. *See* at Pl.'s R. 56.3 at ¶¶ 1, 6. The documents are likely not so voluminous as to justify the use of an evidence summary under FRE 1006. A party's obligation at summary judgment is not to support its motion with admissible evidence, but only to point to information, which, were the case to go to trial, would be admissible as evidence. The CF 7501 entry summary documents would readily meet this test.

Free Trade Agreement ("NAFTA"), which was in effect at the time. FETs were assessed and collected at the statutory rate of $50.33 per 1,000 cigarette "sticks." *See* Pl.'s 56.3 Ex. 1; *see also* 26 U.S.C. § 5701 (setting the tax rate).

The commercial invoices accompanying the Canadian cigarettes indicated that they were sold by Grand River Enterprises of Ohsweken, Ontario. While the invoices say "Ship To: Scottsdale Tobacco LLC, Hogansburg, New York[,]" the goods were in fact shipped directly to FTZ 35, as indicated by the number of the Form 214 FTZ Admission document which is noted at the top of each invoice.[10] The invoices show the brand of the cigarettes sold, and also show the number of cartons and cases shipped, together with the total number of cigarette sticks in the shipment. Each "carton" of cigarettes contains twelve (12) packs having twenty (20) cigarettes per pack, for a total of 200 cigarettes. Each "case" of cigarettes contains sixty (60) cartons, and thus, 12,000 cigarette sticks. Further, the CF 214 documents show the cigarettes admitted into FTZ 35 with "nonprivileged foreign" status.

The importation of the designated cigarettes, their subsequent entry for consumption into the United States and the circumstances and amount of FET paid are not in dispute. Plaintiff imported, and entered for consumption, under cover of twenty-three (23) Type 06 entries, a total of 2,777 cases of cigarettes, or 33,324,000 cigarette sticks.[11] *See* Pl.'s 56.3 Statement at ¶1.

**C.    Plaintiff Exported Substitutable Paper-Wrapped Cigarettes.**

The documentary record also establishes that Scottsdale exported substitutable paper-wrapped cigarettes — the "substituted merchandise" — by depositing paper-wrapped cigarettes in

---

[10] The "Date of Export" and "Date of Import" are shown on the CF 214 Notices of Admission for the subject Canadian cigarettes. *See* Pl.'s 56.3 Statement at ¶ 1.

[11] At an FET rate of $50.33 per cigarette stick, this meant that Plaintiff paid a total of $1,677,196 in FET.

FTZ 35 with "zone-restricted" status. Depositing goods into an FTZ with "zone-restricted" status constitutes an exportation for purpose of the drawback laws.

The export movements into the FTZ can be summarized as follows:

| Admission Date | Cases Admitted | Cigarette Sticks Admitted | Pl.'s 56.3 Statement |
|---|---|---|---|
| 12/26/2018 | 832 | 9,984,000 | Ex. 3 at 460 |
| 01/22/2019 | 832 | 9,984,000 | Ex. 3 at 466 |
| 02/07/2019 | 832 | 9,984,000 | Ex. 3 at 474 |
| 02/11/2019 | 297 | 3,444.000 | Ex. 3 at 478 |

Scottsdale exported a total of 2,783 cases of cigarettes, or a total of 33,396,000 cigarette sticks. The quantity exported is slightly greater than the quantity imported, providing a basis for a refund of all the FETs paid on the imported merchandise.

Documentary evidence also supports the exportation of the products. TTB reports support that cigarettes were removed from Native Trading's TTB-bonded cigarette manufacturing factory without payment of tax, for shipment to a FTZ. *See* Pl.'s 56.3 Statement at ¶7. The trucks' bills of lading show the goods being moved in-bond to the FTZ. *See* Pl.'s 56.3 Statement at ¶8. Documents also show the FTZ operator, Southeastern International Services Inc., receiving the goods into the FTZ for the account of Scottsdale Tobacco, LLC. *See* Pl.'s 56.3 Statement at ¶12.

As noted above, the deposit of merchandise in an FTZ in "zone-restricted" status constitutes exportation for purposes of the duty drawback laws. The Foreign Trade Zones Act at 19 U.S.C. § 81c states:

> [t]hat under the rules and regulations of the controlling Federal agencies, articles which have been taken into a zone from customs territory for the sole purpose of exportation, destruction (except destruction of distilled spirits, wines, and fermented malt liquors), or storage shall be considered exported for the purpose of-

12

> (1) the drawback, warehousing, and bonding, or any other provisions of the Tariff Act of 1930, as amended, and the regulations thereunder; and
>
> the statutes and bonds exacted for the payment of drawback, refund, or exemption from liability for internal-revenue taxes and for the purposes of the internal-revenue laws generally and the regulations thereunder.

Thus, admission of the substituted cigarettes into the FTZ is "zone-restricted" status constitutes exportation for purposes of the drawback laws.

The exportation (for drawback purposes) of these products is further supported by the Customs Regulations, particularly 19 C.F.R. § 146.44(c), which provides that deposits in an FTZ with "zone-restricted" status constitutes an *exportation for drawback purposes*, and that "a copy of the approved Customs Form 214 may be accepted in lieu of any proof of shipment required in cases of actual exportation."

### D. The Imported and Exported Cigarettes are Both Classified Under Subheading 2404.20.80, HTSUS.

Since 2018, the standard for substitution under 19 U.S.C. § 1313(j)(2) drawback requires that the exported "substituted" merchandise be "classifiable under the same eight-digit HTSUS subheading number as such [designated] imported merchandise." *See* 19 U.S.C. § 1313(j)(2)(A). Here, the entry documents for the imported "designated" cigarettes show that they were all classified upon entry under subheading 2402.20.80, HTSUS, which provides for:

| | |
|---|---|
| 2402 | Cigars, cheroots, cigarillos and cigarettes, of tobacco or of tobacco substitutes: |

***

| | |
|---|---|
| 2402.20 | Cigarettes containing tobacco; |

***
Other [than containing clove]:

| | |
|---|---|
| 2404.20.80 | Paper-wrapped. |

Goods so classified are ordinarily subject to duty at a rate of $1.05/kg plus 2.3% *ad valorem*. In the instant case, because the imported designated cigarettes were NAFTA "originating,," no duties were assessed, only FET.

With respect to the substituted exported goods, the CF 214 Notices of Admission showing their admission to FTZ 35 (and consequent exportation) reflect that these cigarettes were also classified in subheading 2404.20.80, HTSUS, thus demonstrating that the imported and exported cigarettes were classified under the same eight-digit subheading of the HTSUS, as required by 19 U.S.C. § 1313(j)(2).

Customs granted substitution unused merchandise drawback on claims involving imported and substituted paper-wrapped cigarettes long before the eight-digit HTSUS substitution standard was adopted. *See Customs Headquarters Ruling 229245 of June 14, 2022*. The classifications shown on the import documents (entries) and the export documents (CF 214 notices) establish that the current 8-digit classification test is satisfied in this case.

E.    **Scottsdale "Possessed" the Substituted Merchandise Prior to Exportation.**

One of the conditions for claiming 19 U.S.C. § 1313(j)(2) substitution unused merchandise drawback is that the claimant must have "possessed" the substituted exported merchandise prior to exportation. Section 313(J)(2)(C)(ii) of the statute requires that the exported merchandise:

> (ii) is in the possession of, including ownership while in bailment, in leased facilities, in transit to, or in any other manner under the operational control of, the party claiming drawback under this paragraph, if that party—
>
> (I)    is the importer of the imported merchandise, or
>
> (II)    received the imported merchandise, other merchandise classifiable under the same 8-digit HTS subheading number as such imported merchandise, or any combination of such imported merchandise and such other merchandise, directly or indirectly from the person who imported and paid any duties, taxes, and fees imposed under Federal law upon importation or entry and due on

14

> the imported merchandise (and any such transferred merchandise, regardless of its origin, will be treated as the imported merchandise and any retained merchandise will be treated as domestic merchandise)[.]

This Court years ago rejected the proposition that a 19 U.S.C. § 1313(j)(2) drawback claimant was required to possess both the imported "designated" merchandise, as well as the exported "substituted" merchandise, *see e.g., Central Soya Co. v. United States*, 15 C.I.T. 105 (1991), and struck down a regulation which required such "dual possession." *See e.g., BFGoodrich Co. v. United States,* 16 C.I.T. 333 (1992).

Documentary evidence supports Scottsdale's possession of the exported cigarettes. These include invoices from Native Trading Inc. selling the untaxpaid cigarettes to Scottsdale, *see* Pl.'s 56.3 Statement at ¶ 8, truck Bills of Lading showing Scottsdale as the consignee of the merchandise being shipped to FTZ 35, *see* Pl.'s 56.3 Statement at ¶8,, and documents showing the FTZ operator receiving the goods for the account of Scottsdale, *see* Pl.'s 56.3 Statement at ¶7.  In addition, Scottsdale possessed the  subject cigarettes while they were in bailment in leased premises (the FTZ), although this technically shows possession *after* exportation had been accomplished.

In addition, the President of Southeast International Services Inc. ("SIS"), the FTZ operator, executed an "agent statement" confirming that SIS had "acted on behalf of the owner and consignee to receive the exported cigarettes into the FTZ," and that Scottsdale was "the true owner and consignee of the cigarettes."[12] *See.* Pl.'s 56.3 Statement at ¶12.

---

[12] This statement was obtained because SIS had inadvertently listed itself, rather than Scottsdale, as the "applicant" for admission of the goods into the FTZ.

**F.       The Exported Cigarettes Were Not "Used" Before Exportation.**

The statute, 19 U.S.C. § 1313(j)(2)(C)(i), requires that the substituted merchandise "is not used within the United States" before exportation. This should not be in dispute because typically, *using a good* yields a *used good*. But the use of a cigarette — smoking it —does not yield a *used cigarette* — it destroys it and yields *ash*.

That the CF 214 admission forms show the quantity of cigarettes being exported in cases, and these quantities match those shown on the commercial invoices, indicates that the substituted cigarettes were not *used—i.e.,* smoked and turned to ash—prior to being exported.

**G.       The Drawback Claim Was Timely Filed.**

Section 1313(j)(2) has a five (5) year time limit for filing drawback claims, measured from the date of importation of the designated merchandise, requiring the filing of a drawback claim "before the close of the 5-year period beginning on the date of importation of the imported merchandise and before the drawback claim is filed, either exported or destroyed under customs supervision." 19 U.S.C. § 1313(j)(2)(B).

This Court recently held that the five year period for filing a § 1313(j)(2) substitution unused merchandise drawback claim runs from the "date of importation"  — which the Court defined as the date the vessel carrying the merchandise enters the limits of a port with intent to unlade — rather than the date on which goods are withdrawn from an FTZ for consumption, and duties and taxes are paid. *King Maker Marketing LLC v. United States*, Slip Op. 25-58 at 8 (May 15, 2025), appeal docketed (Fed Cir. Case 25-1819).  However, the timeliness of the claim filing in the instant case is not an issue. The CF 214 Notices of Admission shows the dates of exportation and importation of the imported merchandise. The earliest importation was in 2016, and the subject drawback claim was filed on February 15, 2019—which is well within the five-year limitation.

16

*See* Pl.'s 56.3 Statement at ¶1. Unlike the facts in *King Maker Marketing, supra*, the timeliness of the filing of the drawback claim is not an issue in this case.

### H.    Plaintiff is Entitled to Drawback.

There is no material dispute that Plaintiff is entitled to receive 19 U.S.C. § 1313(j)(2) drawback for the FET paid in respect of the imported merchandise designated in the subject drawback claim. The uncontradicted evidence shows that, in 2018, Plaintiff entered for consumption and paid FET on about 2,777 cases of tax-paid cigarettes. It also shows that thereafter, in late 2018 and early 2019, Plaintiff exported some 2,783 cases of cigarettes. The imported and exported cigarettes were all classified under subheading 2402.20.80, HTSUS ( "paper wrapped cigarettes,"), thus satisfying the statutory condition for substitutability. The exported merchandise was not used in the United States prior to exportation. It moved from Native Trading's New York factory, in bond, to FTZ 35, where it was admitted with "zone restricted" status, thus effecting an exportation for drawback purposes.

Finally, the claim was timely filed within 5 years of importation of the designated imported merchandise. Because there is no contested material facts at issue, and Plaintiff has satisfied the statutory conditions for the grant of substitution unused merchandise drawback under 19 U.S.C. § 1313(j)(2), Plaintiff, Scottsdale Tobacco LLC., is entitled to summary judgment on its drawback claim, and we respectfully request an order directing the appropriate Customs officer to reliquidate the subject claim with full allowance of drawback.

## II.    In the Alternative, Plaintiff's Drawback Entry was "Deemed Liquidated" and a Drawback Refund Must be Paid.

Alternatively, Plaintiff's claim for drawback should be "deemed liquidated" because Customs failed to liquidate it within one-year of filing, and failed to provide it with a notice indicating that CBP intended to extend the liquidation period.

Historically, there were no laws which limited the time in which Customs was required to liquidate an import entry. Import entries were, and continue to be, liquidated by Customs officers in accordance with Section 500 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1500.[13] In 1984, however, Congress enacted what is currently Section 504(a)(1) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1504(a)(1), which provided that all import entries not liquidated within one-year after their entry dates were "deemed liquidated" at the rate and amount of duty asserted in the entry.[14] CBP was given the power, for good cause, to extend the liquidation period, by up to

---

[13] 19 U.S.C. § 1500 provides:

> The Customs Service shall, under rules and regulations prescribed by the Secretary—
>
> fix the final appraisement of merchandise by ascertaining or estimating the value thereof, under section 1401a of this title, by all reasonable ways and means in his power, any statement of cost or costs of production in any invoice, affidavit, declaration, other document to the contrary notwithstanding;
>
> > (a) fix the final classification and rate of duty applicable to such merchandise;
> >
> > (b) fix the final amount of duty to be paid on such merchandise and determine any increased or additional duties, taxes, and fees due or any excess of duties, taxes, and fees deposited;
> >
> > (c) liquidate the entry and reconciliation, if any, of such merchandise; and
> >
> > (d) give or transmit, pursuant to an electronic data interchange system, notice of such liquidation to the importer, his consignee, or agent in such form and manner as the Secretary shall by regulation prescribe.

[14] The legislation was enacted in connection with implementation of the Tokyo Round of Trade Agreements, and the legislative history accompanying the 1978 legislation stated that the measure was enacted to "increase certainty in the customs process for importers, surety companies, and other third parties with a potential liability relating to a customs transaction." S. Rep. 95-778, 95th Cong. 2nd Sess. 1, 32 (1978), reprinted in 1978 U.S.C.C.A.N. 2211, 2243. *See*, *Dal-Tile Corp. v. United States*, 829 F. Supp. 394, 399 (Ct. Intl. Tr. 1993); *See also Int'l Trading Co. v. United States*, 281 F. 3d 1268(Ct. Intl. Tr. 2002). Before that time, "there was no statutory restriction on the length of time Customs could take to liquidate an entry." *Id.* at 1273; *St. Paul Fire & Marine Ins. Co. v. United States*, 6 F.3d 763, 767 (Fed. Cir. 1993). "Customs could delay liquidation as long as it pleased, with or without giving notice." *Int'l Cargo & Surety Ins. Co. v. United States*, 15 C.I.T. 541, 543 (1991).

three (3) additional one-year periods, up to a maximum of four (4) years from entry. *See* 19 U.S.C. § 1504(b). Finality of liquidation could also be avoided indefinitely if the liquidation of the entry was suspended by statute or court order.

No limitation was placed on the liquidation of drawback claims, although selected claimants who were able to post a bond could obtain "accelerated payment" of drawback amounts, pending final liquidation of their claims. *See* 19 C.F.R. § 191.92 (in effect through November 8, 2018); 19 C.F.R. § 190.92 (effective November 8, 2018).

By 2004, however, Congress had become concerned about the growing backlog of unliquidated drawback claims. To that end, Section 2102 of the Miscellaneous Tariff and Technical Corrections Act of 2004, enacted Section 504 (a)(2) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1504(a)(2), which created a limitation on liquidation of drawback claims.

The "deemed liquidation rule" of 19 U.S.C. § 1504(a)(2)(A), provides:

(2) Entries or claims for drawback

(A) In general.

Except as provided in subparagraph (B) or (C), unless an entry or claim for drawback is extended under subsection (b) or suspended as required by statute or court order, an entry or claim for drawback not liquidated within 1 year from the date of entry or claim shall be deemed liquidated at the drawback amount asserted by the claimant or claim. Notwithstanding section 1500(e) of this title, notice of liquidation need not be given of an entry deemed liquidated.

As the import entries designated in Plaintiff's drawback claim had liquidated by the first anniversary of the filing of the claim, Plaintiff's claim was "deemed liquidated" by operation of law on February 15, 2020 – one year after the claim was filed.

This statutory rule of "deemed liquidation" is subject to only three exceptions. <u>First</u>, CBP may extend the period for liquidating the drawback claim even if all the designated import entries have liquidated within the one-year anniversary of filing the drawback claim. CBP did not do that

in the case of the drawback claim at issue here, entry no. H52-0005246-3. Nor was liquidation of any import entries suspended pursuant to statute or court order.

The <u>second exception</u> is provided at 19 U.S.C. § 1504(a)(2)(B), and describes circumstances not presented here. Section 504(a)(2)(B) provides an option by which a claimant can force liquidation of its drawback claim, even if the designated import entries were not liquidated one-year after the drawback claim was filed. The statute provides:

> (B) Unliquidated imports.
>
> An entry or claim for drawback whose designated or identified import entries have not been liquidated and become final within the 1-year period described in subparagraph (A), or within the 1-year period described in subparagraph (C), shall be deemed liquidated upon the deposit of estimated duties on the unliquidated imported merchandise, and upon the filing with the Customs Service of a written request for the liquidation of the drawback entry or claim. Such a request must include a waiver of any right to payment or refund under other provisions of law. The Secretary of the Treasury shall prescribe any necessary regulations for the purpose of administering this subparagraph.

This subsection of the statute provides a mechanism for a drawback claimant to force liquidation of its claim.[15] It can be invoked even before the one-year "deemed liquidation" period has run. Plaintiff did not avail itself of this option with respect to the drawback claim at bar. As of the first anniversary of the filing of the drawback entry there were no longer any "unliquidated imports" in its claim.

Since filing of an import entry necessarily precedes the filing of a drawback claim, and the import entry is required to be liquidated within one-year, one would expect the "deemed liquidated" rule of § 1504(a)(2)(A) to apply in most cases. However, there are situations where this may not be so—*e.g.,* if liquidation of one of the designated import entries has been extended

---

[15] Interestingly, when a claimant exercises this option, it does not merely open up the claim to be considered by Customs, it actually works as a deemed liquidation of the claim in the claimant's favor.

by Customs, or if liquidation of one of more of the designated entries is suspended under the antidumping or countervailing duty statutes or pursuant to a court order. Such problematic entries may account for only a small portion of the drawback claim. Rather than force the drawback claimant to wait many years for its claim to be processed,[16] Section 1504(a)(2)(B) allows the claimant to receive its drawback funds, subject to conditions set out in the Customs Regulations.[17]

---

[16] A delay in liquidation of a drawback claim may be unimportant to a claimant who has received accelerated payment of drawback under 19 C.F.R. § 190.92. However, the accelerated payment privilege requires the posting of a dollar-for-dollar surety bond. Many drawback claimants do not have the financial wherewithal to obtain such a bond. Even when a bond is obtained, if there are too many unliquidated drawback claims, the surety may refuse to bond additional claims, or the claimant may not be able to afford additional bonding. By providing for deemed liquidation upon payment of estimated duties and written request, 19 U.S.C. § 1504(a)(2)(B) not only allows the claimant to receive its drawback but relieves the financial pressure on claimants and their bond sureties.

[17] The relevant regulation, 19 C.F.R. § 190.81(b) ("Claims based on estimated duties"), provides:

(1) Drawback may be paid upon liquidation of a claim based on estimated duties if one or more of the designated import entries have not been liquidated, or the liquidation has not become final (because of a protest being filed) (see also § 173.4(c) of this chapter), only if the drawback claimant and any other party responsible for the payment of liquidated import duties each files a written request for payment of each drawback claim, waiving any right to payment or refund under other provisions of law, to the extent that the estimated duties on the unliquidated import entry are included in the drawback claim for which drawback on estimated duties is requested under this paragraph. The drawback claimant must, to the best of its knowledge, identify each import entry that has been protested and that is included in the drawback claim. A drawback entry, once finally liquidated on the basis of estimated duties pursuant to paragraph (e)(2) of this section, will not be adjusted by reason of a subsequent final liquidation of the import entry.

(2) However, if final liquidation of the import entry discloses that the total amount of import duty is different from the total estimated duties deposited, except in those cases when drawback is 100% of the duty, the party responsible for the payment of liquidated duties, as applicable, will:

(i) Be liable for 1 percent of all increased duties found to be due on that portion of merchandise recorded on the drawback entry; or

(ii) Be entitled to a refund of 1 percent of all excess duties found to have been paid as estimated duties on that portion of the merchandise recorded on the drawback entry.

21

In this way, the current statutory scheme achieves the balance Congress has sought for decades, which is designed to ensure that the processing of drawback claims will not result in "excessive refunds," while preserving importers' rights to pursue relief in respect of import entries designated in their drawback claims. *See* S. Rep. 108-28 at p. 172-173 (2003).

The <u>third exception</u> to the "deemed liquidation" rule for drawback claims, set out in 19 U.S.C. § 1504(a)(2)(C), is described as a "transitional rule" which required all drawback claims unliquidated as of December 3, 2004, to be liquidated within one-year of that date, or be "deemed liquidated." *Ford Motor Co. v. United States,* 44 F. Supp. 3d 1330, 1334 (2015). That provision is inapplicable here.

Thus, the Section 504(a)(2)(A) conditions for "deemed liquidation" of Plaintiff's drawback claim are met in this case. None of the three exceptions to that "general rule" apply here and the entry liquidated by operation of law on February 15, 2020. Customs' subsequent purported liquidation on October 23, 2022 was untimely and void.  This result was not affected by the suspension of liquidation ordered by this Court on May 15, 2020 in *National Association of Manufacturers v. United States,* 2020 Ct. Int'l Tr. LEXIS 68* (2020) – by that time, the one-year limitation on liquidation for drawback claim H52-0005246-3 had already expired, and no timely notice of extension of liquidation had been given as required by the statute.

---

This regulation allows the claimant to receive drawback based on estimated duty payments without forcing the importer (which may be the claimant or another person) to abandon any protests or claims it may have respecting the import entry – achieving the same balance sought to be preserved in *United States v Champion Coated Paper Co*., 22 C.C.P.A. 414 (1934); *Geo. Wm. Rueff, Inc. v. United States*, 13 Cust. Ct. 232 (1944).

Remarkably, the procedure outlined in Section 504(b)(1)(B) do not merely authorize CBP to "work" a drawback claim based on estimated duties—it results in a deemed liquidation of the drawback claim as filed. This, presumably, leaves CBP only the 90-day reliquidation period, 19 U.S.C. § 1501, to make any corrections to the allowance of the claim.

Similarly, Customs' purported liquidation of the drawback claim on October 23, 2022, occurred more than three years after the claim had been filed, and no timely notice of extension had been given.

In *Performance Additives, LLC v. United States*, 705 F. Supp. 3d 1385 (Ct. Int'l Tr. 2024), appeal pending, (Fed. Cir. Case No. 2024-2059) this Court held that the "deemed liquidation" provision of 19 U.S.C. § 1504(a)(2)(A) is triggered only when the import entries designated in a drawback claim have been liquidated and made final—*i.e.,* the 180-day protest period following liquidation has expired as to all designated import entries. However, nowhere does Section 504(a)(2)(A) require that the entries be anything other than "liquidated." The only requirement that entries be liquidated "and final" appears in 19 U.S.C. § 1504(a)(2)(B)—and requires there to be entries which are *not* "liquidated and final"—which specifies the conditions for a drawback claimant to seek a deemed liquidation when its claim features "unliquidated entries." This provision is inapplicable in the instant case, since all of the import entries designated in Plaintiff's claim had been liquidated within one-year after the filing of the drawback claim.

The Court should hold that Plaintiff's drawback claim was "deemed liquidated" as filed one-year after the February 15, 2019 filing date, and that Customs' purported liquidation on October 23, 2022, was untimely and void.

## **CONCLUSION**

For the reasons set forth above, this Court should grant summary judgment in favor of Plaintiff Scottsdale Tobacco, LLC, and direct the appropriate officer to reliquidate Plaintiff's drawback claim with full payment of drawback.

Respectfully submitted,

NEVILLE PETERSON LLP
*Counsel for Plaintiff*

/s/ John M. Peterson
John M. Peterson
Richard F. O'Neill
Patrick B. Klein
Sanzida Talukder
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated: August 13, 2025.

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE HON. JENNIFER CHOE-GROVES, JUDGE**
------------------------------------------------------------------ X
**SCOTTSDALE TOBACCO, LLC.**                      **:**
                                                  **:**
                  **Plaintiff,**                  **:**
                                                  **:**
                  *v.*                            **:**        **Court No. 24-00022**
                                                  **:**
**UNITED STATES,**                                **:**
                                                  **:**
                  **Defendants.**                 **:**
------------------------------------------------------------------ X

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to the U.S. Court of International Trade Standard Chambers Procedures, and in reliance upon the word count feature of the word processing program used to prepare the instant Memorandum, I, Patrick B. Klein, of Neville Peterson LLP, who is responsible for the instant Memorandum, certify that it contains 7,488 words.

Respectfully submitted,

/s/ Patrick B. Klein
Patrick B. Klein