UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JENNIFER CHOE-GROVES, JUDGE

_____

|  |  |  |
|---|---|---|
| SCOTTSDALE TOBACCO, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Court No. 24-00022 |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

_____

## <u>ORDER</u>

Upon consideration of defendant's cross-motion for summary judgment and response in opposition to plaintiff's motion for summary judgment, other papers on file, and upon due deliberation, it is hereby

**ORDERED** that defendant's cross-motion for summary judgment is hereby granted; and it is

**ORDERED** that plaintiff's motion for summary judgment is hereby denied; and it is further

**ORDERED** that judgment is entered for defendant and this action is dismissed.


_____
JUDGE

Dated: _____
         New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| _____ : | |
| SCOTTSDALE TOBACCO, LLC, : | |
| : | |
| Plaintiff, : | |
| : | Court No. 24-00022 |
| v. : | |
| : | |
| UNITED STATES, : | |
| : | |
| Defendant. : | |
| _____ : | |

## DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:     /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Alexander Vanderweide
Of Counsel:                          ALEXANDER VANDERWEIDE
EMMA L. TINER                        Senior Trial Counsel
Office of the Assistant Chief Counsel  International Trade Field Office
International Trade Litigation        Department of Justice, Civil Division
U.S. Customs and Border Protection   Commercial Litigation Branch
                                     26 Federal Plaza, Room 346
                                     New York, New York 10278
                                     (202) 598-0287
December 1, 2025                      Attorneys for Defendant

# TABLE OF CONTENTS

BACKGROUND ............................................................................................................... 1

QUESTIONS PRESENTED ............................................................................................. 3

SUMMARY OF ARGUMENT ........................................................................................ 3

ARGUMENT .................................................................................................................... 4

    I.       STANDARD OF REVIEW ..................................................................... 4

    II.     STL HAS FAILED TO SUBSTANTIATE ITS CLAIM FOR DRAWBACK ......... 5

      A.  The Applicable Statutory and Regulatory Framework .................................... 5

      B.  CBP Properly Denied STL's Drawback Claim ............................................. 9

    III.    THE DRAWBACK CLAIM DID NOT LIQUIDATE BY OPERATION OF LAW ...... 13

      A.  The Applicable Statutory and Regulatory Framework .................................. 13

      B.  Overview of the Legal Framework of 19 U.S.C 1504(a)(2) ........................ 15

      C.  STL's Drawback Claim Did Not Deem Liquidate Under Section §1504(a)(2) ........... 17

CONCLUSION ............................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ....................................................................................................... 4

*BP America Production Co. v. Burton*,
549 U.S. 84 (2006) ........................................................................................................ 17

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................................................................................ 4

*EchoStar Techs., L.L.C. v. United States*,
391 F. Supp. 3d 1316 (Ct. Int'l Trade 2019) ................................................................ 9

i

*Ford Motor Co. v. United States*,
44 F. Supp. 3d 1330 (Ct. Int'l Trade 2015) ............................................................... 4, 15, 16, 18

*Graham Eng'g Corp. v. United States*,
465 F. Supp. 2d 1353 (Ct. Int'l Trade 2006),
*aff'd,* 510 F.3d 1385 (Fed. Cir. 2007) .......................................................................... 8

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*,
530 U.S. 1 (2000) ........................................................................................................ 17

*Int'l Light Metals v. United States*,
279 F.3d 999 (Fed. Cir. 2002) ..................................................................................... 9

*Marathon Oil Co. v. United States*,
24 CIT 211 (2000) ....................................................................................................... 12

*Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .................................................................................................... 5

*National Ass'n of Manufacturers v. United States Dep't of Treasury*,
Court No. 19-00053 ..................................................................................................... 2

*Performance Additives, LLC v. United States*,
705 F. Supp. 3d 1385 (Ct. Int'l Trade 2024) ....................................................... *passim*

*Phone-Mate, Inc. v. United States*,
690 F. Supp. 1048 (Ct. Int'l Tr. 1988),
*aff'd,* 867 F.2d 1404 (Fed. Cir. 1989) .......................................................................... 5

*Sebelius v. Cloer*,
569 U.S. 369 (2013) ..................................................................................................... 17

*Shell Oil Co. v. United States*,
688 F.3d 1376 (Fed. Cir. 2012) ................................................................................... 8

*Texas Apparel Co. v. United States*,
698 F. Supp. 932 (Ct. Int'l Tr. 1988),
*aff'd,* 883 F.2d (Fed. Cir. 1989)
*cert denied* 493 U.S. 1024 (1990) ............................................................................... 4

*United States v. Pan Pac. Textile Group Inc.*,
276 F. Supp. 2d 1316 (Ct. Int'l Tr. 2003) ................................................................... 5

**HARMONIZED TARIFF SCHEDULE OF THE UNITED STATES**

**Chapter 24**

Heading 2402

Subheading 2402.20.80 .................................................................................. 9

Subheading 2402.20.8000 ............................................................................. 2

**Statutes**

19 U.S.C. § 1313 ......................................................................................... 1

19 U.S.C. §1313(j) ...................................................................................... 6

19 U.S.C. §1313(j)(1) .................................................................................. 7

19 U.S.C. § 1313(j)(2) .............................................................................. 2, 5

19 U.S.C. § 1504(a)(2) ........................................................................ *passim*

19 U.S.C. § 1504(a)(2)(A) .................................................................... *passim*

19 U.S.C. § 1504(a)(2)(B) .................................................................... *passim*

19 U.S.C. § 1508(a) ................................................................................. 3, 6

19 U.S.C. § 1508(a)(3) ............................................................................... 12

19 U.S.C. § 1508 (c) ................................................................................... 3

19 U.S.C. § 1508(c)(2) ................................................................................ 7

19 U.S.C. § 1514 ....................................................................................... 19

19 U.S.C. § 1514(a) .............................................................................. 14, 19

19 U.S.C. § 1514(c) ................................................................................... 14

19 U.S.C. § 1514(c)(3)(A) .......................................................................... 15

**Rules**

USCIT Rule 56 ............................................................................................ 4

USCIT Rule 56(c) ........................................................................................ 4

USCIT Rule 56.3 ......................................................................................... 1

**Regulations**

19 C.F.R. § 146.32 ................................................................................................... 10

19 C.F.R. § 190.38(b) ...................................................................................... 3, 8, 9, 11

19 C.F.R. § 190.52(b) ............................................................................................. 3, 8

19 C.F.R. § 190.61(a) ................................................................................................. 7

19 C.F.R. § 190.61(a)-(b) ........................................................................................... 3

19 C.F.R. § 190.61(b) ................................................................................................. 7

19 C.F.R. § 190.81(b) ............................................................................................... 20

19 C.F.R § 190.2 ............................................................................................. 7, 9, 12

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JENNIFER CHOE-GROVES, JUDGE

_____
                                                :
SCOTTSDALE TOBACCO, LLC,                         :
                                                :
                          Plaintiff,             :
                                                :         Court No. 24-00022
                  v.                             :
                                                :
UNITED STATES,                                   :
                                                :
                          Defendant.             :
_____ :

## DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Rules of the United States Court of International Trade (USCIT), defendant, the United States (the Government), respectfully moves for an order granting its cross-motion for summary judgment, denying plaintiff's motion for summary judgment, and dismissing this action. The reasons for our cross-motion are set forth below, and in defendant's response to plaintiff's Rule 56.3 statement of material facts not in dispute and defendant's Rule 56.3 statement of undisputed materials facts, attached hereto.

## BACKGROUND

This case concerns the privilege of "drawback." Drawback is the payment by U.S. Customs and Border Protection (CBP) to a qualifying claimant of up to 99% of the taxes, duties, and fees paid on imported goods when the same or substituted goods are exported or are used in the manufacture of products that are exported, or when certain other specified conditions are met. *See generally* 19 U.S.C. § 1313. "There are two relevant sets of entries making up a drawback claim: (1) the underlying import or consumption entries filed with Customs at the time of importation; and (2) the drawback entry or claim, filed after importation, which covers one or

more underlying import entries." *Performance Additives, LLC v. United States*, 705 F. Supp. 3d 1385, 1389 (Ct. Int'l Trade 2024), *appeal pending*.

This case involves a single drawback claim, Entry No. H52-0005246-3, made at the port of New York, New York on February 15, 2019, covering 23 designated import entries of "paper-wrapped cigarettes" that liquidated between February 15, 2019 and October 11, 2019. *See* Protest & Entry Papers, ECF No. 14-2 at 138 (Entry Summary); Declaration of Sonia L. Elmalis (Sept. 26, 2025), ¶ 4 (Elmalis Decl.). Those liquidations became final 180 days later on various dates between August 14, 2019 and April 8, 2020. Elmalis Decl., ¶ 5. On July 24, 2020, the drawback claim was suspended under *Nat'l Ass'n of Manufacturers v. United States Dep't of Treasury*, Court No. 19-00053. Elmalis Decl., ¶ 6. Following the lifting of that suspension on October 14, 2021, the liquidation of the drawback claim was extended for a period of one year on March 15, 2022. *Id.*, ¶ 7. On October 21, 2022, the drawback claim was liquidated by CBP without drawback. *See* Protest & Entry Papers, ECF No. 14-2 at 141 (liquidation history).

Plaintiff, Scottsdale Tobacco, LLC (STL), challenges CBP's liquidation of the subject drawback claim on two grounds. First, STL argues that its claim is eligible "for the payment of substitution unused merchandise drawback of Federal Excise Taxes" pursuant to 19 U.S.C. § 1313(j)(2) because "[b]oth the imported designated merchandise and the exported substituted merchandise are classifiable under the same 8-digit subheading of the HTSUS, to wit, subheading 2402.20.8000, HTSUS." Compl. ¶¶ 22-23. Second, STL alleges that its drawback claim deemed liquidated at the amounts asserted in the claim one year after it was filed, in accordance with 19 U.S.C. § 1504(a)(2)(A), because CBP "did not extend the liquidation date for Drawback Entry H52-0005246-3 within" that year. *Id.* ¶¶ 26-27.

STL cannot prevail on either challenge. First, STL has not produced the necessary documentation to perfect its drawback claim in accordance with the governing regulations, which has prevented CBP from verifying the basis for STL's claim. STL's drawback claim is thus deficient as a matter of law. Second, STL's construction of the deemed liquidation statute for drawback claims, 19 U.S.C. § 1504(a)(2), is not supported by the law, conflicts with prior decisions of this Court, and should be rejected. Consequently, CBP validly liquidated STL's claim with zero drawback. Accordingly, our cross-motion for summary judgment should be granted, plaintiff's motion for summary judgment should be denied, and this action should be dismissed.

## QUESTIONS PRESENTED

Whether STL has perfected its drawback claim, and whether STL's claim deemed liquidated by operation of law.

## SUMMARY OF ARGUMENT

STL has not demonstrated that it is entitled to receive drawback of Federal Excise Taxes purportedly paid on the cigarettes that serve as the designated import entries for the subject drawback claim. Statutory recordkeeping requirements, 19 U.S.C. § 1508(a), (c), and CBP regulations, 19 C.F.R. § 190.61(a)-(b), 19 C.F.R. § 190.38(b), 19 C.F.R. § 190.52(b), require drawback claimants to document and perfect the basis for the claim so that CBP can verify the claim. CBP could not verify STL's claim given the numerous deficiencies in the documents provided by STL. As a result of these deficiencies, STL has not perfected its claim, CBP could not verify the claim, and as such, CBP properly denied drawback on the claim.

STL's claim also did not become deem liquidated by operation of 19 U.S.C. § 1504(a)(2)(A), as STL contends. As made evident by the terms of 19 U.S.C. § 1504(a)(2), and

as explained by this Court in *Performance Additives*, 705 F. Supp. 3d 1385 (Ct. Int'l Trade 2024), *appeal pending*. and *Ford Motor Co. v. United States*, 44 F. Supp. 3d 1330 (Ct. Int'l Trade 2015), a deemed liquidation of a drawback claim under subparagraph (A) only occurs when all of the designated import entries are liquidated and those liquidations are final by the end of the statutory one-year period, as measured from the date that the drawback claim is filed. 19 U.S.C. § 1504(a)(2)(A). Because all designated import entries underlying STL's claim were not liquidated and final (*i.e.*, 180 days after the liquidations, without protest) within the one-year statutory period, STL's drawback claim did not deem liquidate in accordance with 19 U.S.C. § 1504(a)(2)(A). Nor did the subject drawback claim deem liquidate pursuant to 19 U.S.C. § 1504(a)(2)(B), as STL did not deposit estimated duties on the unliquidated imported merchandise and file a written request for the liquidation of the drawback claim with CBP, as is required to trigger a deemed liquidation under subparagraph (B). Consequently, STL's drawback claim was properly liquidated by CBP at a drawback amount of zero.

## ARGUMENT

### I.     STANDARD OF REVIEW

Under USCIT Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." USCIT Rule 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). On a motion for summary judgment, the Court determines whether there are any factual disputes that are material to the resolution of the action. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Texas Apparel Co. v. United States*, 698 F. Supp. 932, 934 (Ct. Int'l Tr. 1988), *aff'd*, 883 F.2d 66 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1024 (1990) (citations

omitted).  "The court may not resolve or try factual issues on a motion for summary judgment." *Phone-Mate, Inc. v. United States*, 690 F. Supp. 1048, 1050 (Ct. Int'l Tr. 1988), *aff'd*, 867 F.2d 1404 (Fed. Cir. 1989) (citation omitted).  In determining whether a genuine issue of fact exists, the Court reviews the evidence submitted, drawing all inferences against the moving party.  *See United States v. Pan Pac. Textile Group Inc.*, 276 F. Supp. 2d 1316, 1319 (Ct. Int'l Tr. 2003); *Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Here, there are no material facts in dispute to preclude summary judgment in favor of the Government.

## II.    STL HAS FAILED TO SUBSTANTIATE ITS CLAIM FOR DRAWBACK

### A.  The Applicable Statutory and Regulatory Framework

STL contends that it has satisfied the requirements for claiming drawback of unused substituted merchandise under 19 U.S.C. § 1313(j)(2).  That provision states, in relevant part, as follows:

> (2) Subject to paragraphs (4), (5), and (6), if there is, with respect to imported merchandise on which was paid any duty, tax, or fee imposed under Federal law upon entry or importation, any other merchandise (whether imported or domestic), that—
>
> (A) is classifiable under the same 8-digit HTS subheading number as such imported merchandise;
>
> (B) is, before the close of the 5-year period beginning on the date of importation of the imported merchandise and before the drawback claim is filed, either exported or destroyed under customs supervision; and
>
> (C) before such exportation or destruction—
>
> (i) is not used within the United States, and
> (ii) is in the possession of, including ownership while in bailment, in leased facilities, in transit to, or in any other manner under the operational control of, the party claiming drawback under this paragraph, if that party—
>
> (I)  is the importer of the imported merchandise, or

5

>> (II) received the imported merchandise, other merchandise classifiable under the same 8-digit HTS subheading number as such imported merchandise, or any combination of such imported merchandise and such other merchandise, directly or indirectly from the person who imported and paid any duties, taxes, and fees imposed under Federal law upon importation or entry and due on the imported merchandise (and any such transferred merchandise, regardless of its origin, will be treated as the imported merchandise and any retained merchandise will be treated as domestic merchandise);

> then, notwithstanding any other provision of law, upon the exportation or destruction of such other merchandise an amount calculated pursuant to regulations prescribed by the Secretary of the Treasury under subsection (*l*) shall be refunded as drawback….

In addition to the section 1313(j) eligibility requirements, all drawback claims require supporting documentation, which in accordance with 19 U.S.C. § 1508(a), the claimant must maintain as part of its recordkeeping practice. Section 1508(a) provides as follows:

> (a) Requirements

>> Any—

>> (1) owner, importer, consignee, importer of record, entry filer, or other party who—

>>> (A) imports merchandise into the customs territory of the United States, files a drawback claim, or transports or stores merchandise carried or held under bond, or

>>> (B) knowingly causes the importation or transportation or storage of merchandise carried or held under bond into or from the customs territory of the United States;

>> (2) agent of any party described in paragraph (1); or

>> (3) person whose activities require the filing of a declaration or entry, or both;

> shall make, keep, and render for examination and inspection
> records (which for purposes of this section include, but are not
> limited to, statements, declarations, documents and electronically
> generated or machine readable data) which—
>
> (A) pertain to any such activity, or to the information contained in
>     the records required by this chapter in connection with any
>     such activity; and
>
> (B) are normally kept in the ordinary course of business.

These drawback records must be kept until the third anniversary of the date of liquidation

of the claim.  19 U.S.C. § 1508(c)(2).

Furthermore, all drawback claims are subject to CBP verification, 19 C.F.R. § 190.61(a),

which "may include an examination of all records relating to the transaction(s)."  19 C.F.R.

§ 190.61(b).

> *Verification* means the examination of any and all records,
> maintained by the claimant, or any party involved in
> the drawback process, which are required by the appropriate CBP
> officer to render a meaningful recommendation concerning
> the drawback claimant's conformity to the law and regulations and
> the determination of supportability, correctness, and validity of the
> specific claim or groups of claims being verified.

19 C.F.R § 190.2.  To that end, "{m}erchandise subject to drawback under 19 U.S.C. 1313(j)(1)

and (j)(2) must be accounted for in a manner which will enable the claimant:

> (1) To determine, and CBP to verify, the applicable import entry or
>     transfer(s) of drawback-eligible merchandise;
>
> (2) To determine, and CBP to verify, the applicable exportation or
>     destruction; and
>
> (3) To identify, with respect to the import entry or any transfer(s)
>     of drawback-eligible merchandise, the imported merchandise
>     designated as the basis for the drawback claim."

19 C.F.R. § 190.38(b).  Upon submission and review of the drawback claim, CBP may determine

that additional evidence or information is required to perfect the claim.  19 C.F.R. § 190.52(b).

"Such additional evidence or information may include, but is not limited to:

> (1) Records or other documentary evidence of exportation, as provided for in § 190.72, which shows that the articles were shipped by the person filing the drawback entry, or a letter of endorsement from the exporter which must be attached to such records or other documentary evidence, showing that the party filing the entry is authorized to claim drawback and receive payment (the claimant must have on file and make available to CBP upon request, the endorsement from the exporter assigning the right to claim drawback);

> (2) A copy of the import entry and invoice annotated for the merchandise identified or designated;

> (3) A copy of the export invoice annotated to indicate the items on which drawback is being claimed; and

> (4) Records documenting the transfer of the merchandise including records kept in the normal course of business upon which the claim is based (*see* § 190.10)."

*Id*.

Against this statutory and regulatory framework, we highlight that "drawbacks are a

privilege, not a right."  *Shell Oil Co. v. United States*, 688 F.3d 1376, 1382 (Fed. Cir. 2012)

(internal citations omitted).  "Because drawbacks are deemed a 'mere gratuity, proffered by the

government,' it is incumbent upon the applicant to take the 'preliminary steps and acts ... in

accordance with [applicable] regulations' in order to establish their drawback claim."  *Graham

Eng'g Corp. v. United States*, 465 F. Supp. 2d 1353, 1357-58 (Ct. Int'l Trade 2006) (citations

omitted), *aff'd*, 510 F.3d 1385 (Fed. Cir. 2007).  The applicable drawback regulations, which

"are within Customs' authority" are "mandatory, not merely directory, and compliance is a

condition precedent to the right of recovery of drawback."  *Id*. (cleaned up).  As such, "CBP has

the authority to deny drawback claims which fail to strictly adhere to the drawback filing requirements." *EchoStar Techs., L.L.C. v. United States*, 391 F. Supp. 3d 1316, 1320 (Ct. Int'l Trade 2019) (citing *Int'l Light Metals v. United States*, 279 F.3d 999, 1001 (Fed. Cir. 2002)).

### B.  CBP Properly Denied STL's Drawback Claim

CBP denied STL drawback because the claim could not be verified.  As noted above, the governing drawback regulations bestow CBP with broad authority to examine "any and all records" in order to verify "the drawback claimant's conformity to the [applicable] law and regulations."  19 C.F.R § 190.2.  Here, despite CBP's repeated request for additional substantiating documentation, STL has not produced sufficient documentation establishing (1) receipt of the imported cigarettes (*i.e.*, documents with the description and quantity of the imported cigarettes entered into inventory) and (2) withdrawal of the same cigarettes from inventory (*i.e.*, documents showing the date of withdrawal from inventory of the total quantity of cigarettes intended for export to a foreign trade zone (FTZ)).  As such, CBP has been unable to trace the imported paper-wrapped cigarettes, by description and quantity, from their apparent admission into the FTZ to their entry into U.S. commerce as Type 06 Foreign Trade Zone consumption entries.  Nor has CBP been able to confirm that all of the subsequently exported merchandise has been withdrawn from domestic inventory on a specific date or dates for admission into an FTZ.  Without this documentary evidence, STL's substitution drawback claim has yet to be perfected, and therefore, cannot be verified.  19 C.F.R. § 190.38(b).

The Canadian-origin merchandise[1] that forms the basis of STL's drawback claim was apparently admitted into Foreign-Trade Zone #25 (Port Everglades) in Fort Lauderdale, Florida

---

[1] There lies a discrepancy between the import and export figures in STL's moving papers and its included affirmation.  STL claims to have "purchased some 2783 cases of paper-wrapped cigarettes, classifiable under Harmonized Tariff Schedule (HTS) subheading 2402.20.80."  Pl.'s Mot. Summary J. (Pl.'s MSJ), Ex. 2 (Affirmation of Dan Doran), ¶ 2, ECF No. 25-5.  In its brief,

between September 2016 and April 2018.[2]  *See* Pl.'s MSJ, Ex. 1 (Bates Stamps 0317, 0324-25,

0336, 0344), ECF Nos. 25, 25-1, 25-2.  The documentary proof for these admissions, which CBP

used to initially identify the merchandise that would ultimately serve as the basis for STL's

drawback claim, is comprised of six CBP Form 214s (titled "Application for Foreign Trade Zone

Admission and/or Status Designation").  *See, e.g.*, Pl.'s MSJ, Ex. 1 (Bates Stamps 0317, 0324-

25, 0336, 0344, 0351, 0428); *see also* 19 C.F.R. § 146.32 (Application and permit for admission

of merchandise).  Throughout the administrative proceedings and in discovery, however, STL

never provided <u>complete</u> CBP Form 214s associated with these initial admissions.  Indeed, five

of the six CBP Form 214s are missing the second page (out of two total pages).  The second page

provides crucial information pertaining to the description of the admitted merchandise, including

the number of packages, by case and carton; invoice identifying information; quantities; and

itemized weight and value.  *See, e.g.*, Pl.'s MSJ, Ex. 1 (Bates Stamps 0317, 0336, 0344, 0351,

0428); *but see id.* (Bates Stamp 0324-25) (including the second page).

    STL subsequently made 23 entries[3] into the United States for domestic consumption.

*See generally* Pl.'s MSJ, Ex. 1.  As proof of importation, STL submitted entry summaries and

invoices from STL to the Canadian supplier.  Yet errors persist between the submitted invoices

and the CBP Form 7501s (entry summaries) and (as noted above) the incomplete CBP Form

---

however, STL contends that it imported 2,777 cases, and <u>exported</u> 2,783 cases, such that "[t]he
quantity exported is slightly greater than the quantity imported, providing a basis for a refund of
all the FETs [Federal Excise Taxes] paid on the imported merchandise."  Pl.'s MSJ at 11-12.
After reviewing STL's entry documentation, the 2,777 import and 2,783 export figures set forth
in its moving papers, and not in its affirmation, are correct.

[2] Throughout its brief and in some supporting exhibits, STL refers to FTZ <u>35</u>.  However, the
relevant CBP Form 214s on both the import and export side of the purported transactions all
indicate FTZ <u>25</u>.

[3] Further confusing the scope of the merchandise at issue, STL's President Dan Doran stated that
only "twenty-one (21)" consumption entries were made.  *See* Affirmation of Dan Doran, ¶ 4.

214s, further undermining STL's claim that it is entitled to drawback.  *See, e.g.*, Pl.'s MSJ, Ex. 1 (Bates Stamp 320-21) (showing entry summary "Entered Value" of $28,014.00 versus invoice "TOTAL VALUE" of $27,462.00); *see also id.* (Bates Stamp 0370-72) (comparing invoice that appears to be missing unique "Invoice No." and listing a "Form 214" number that does not correspond to the next-in-order CBP Form 214); *see also, e.g., id.* (Bates Stamp 0327, 0331, 0335, 0338, 0343, 0348, 0350) (showing repeated typographical errors in CBP Form 214 numbers listed on import invoices).  Without complete and accurate forms, STL has failed to show that the admitted merchandise matches, in quantity and description, with the subsequently entered merchandise.

Given the incomplete admission forms, invoice errors, and general uncertainty regarding the specific quantity and nature of the imported paper-wrapped cigarettes, the United States has repeatedly represented to STL that further information and supporting documentation was required to adequately substantiate the import receipt of the foreign-origin merchandise.  *See, e.g.*, Protest & Entry Papers, ECF No. 14-1 at 184 (denying STL's request for accelerated payment of drawback on August 25, 2021).  Such documentation—for example, proof of delivery to STL or a designated customer[4]—would in theory supplement the cursory merchandise description and information included in STL's entry summaries and allow the Court or the United States to verify that the imported merchandise was the same as the merchandise actually "designated as the basis of the drawback claim."  19 C.F.R. § 190.38(b); *cf., e.g.*, Pl.'s MSJ, Ex. 1 (Bates Stamp 0365-66) (showing a typical entry summary).  While the drawback statute and regulations do not list specific documents that are needed to show that imported

---

[4] STL has indicated that it "pre-sold" the product to a customer called DK Distributors, Inc.  *See* Protest & Entry Papers, ECF No. 14-2 at 117.

merchandise was received by the person or company that will ultimately claim drawback following exportation of substituted merchandise, nevertheless a claimant "must show that it has properly documented its drawback claims and supply all relevant information to Customs." *Marathon Oil Co. v. United States*, 24 CIT 211, 218 (2000).  To this end, the recordkeeping statute requires the maintenance (and production "for examination and inspection") of all records "normally kept in the ordinary course of business."  19 U.S.C. § 1508(a)(3).  To date, however, STL has not provided sufficient documentation to demonstrate the receipt of the imported cigarettes into inventory, an essential predicate to establishing STL's substitution drawback claim.

There are also gaps in STL's documentation for the exportation of the "substituted" paper-wrapped cigarettes.  Although the records produced by STL indicate that it admitted merchandise in zone-restricted status, *see* 19 C.F.R. § 190.2, as reflected in four additional CBP Form 214s, the origin of that merchandise can be tracked primarily through transactional documents (invoices, purchase orders, and shipping documents).  Yet the United States requested—but did not receive—"withdrawal from inventory document[s]" for all four export shipments.  *See* Protest & Entry Papers, ECF No. 14-1 at 184.  To complete the verification of the substitution drawback claim, STL is required to provide clear documentation kept in the ordinary course of business relating to all of the "substituted" merchandise.  STL's submission of some internal company inventory records, showing that certain cigarettes to be exported had been withdrawn from existing domestic inventory, demonstrates that it likely could have provided this information for the entirety of the export shipments at issue.  But STL provided only partial proof that merchandise of the quantity and description it claims was actually

withdrawn, transported, and admitted to the Port Everglades FTZ.  *See generally* Pl.'s MSJ, Ex. 3.

Taken together, these deficiencies in STL's documents result in a drawback claim that has not been perfected as it is missing information essential to verify the basis of the claim. Since the information cannot be verified, STL has failed to show that it is entitled to a claim for drawback.

### III.    THE DRAWBACK CLAIM DID NOT LIQUIDATE BY OPERATION OF LAW

#### A.  The Applicable Statutory and Regulatory Framework

In the alternative, STL contends that its drawback claim deemed liquidated in accordance with the limits on liquidation set forth in 19 U.S.C. § 1504(a)(2)(A).  In its entirety, section 1504(a)(2) provides as follows:

> (2) Entries or claims for drawback
>
> (A) In general
>
> Except as provided in subparagraph (B) or (C), unless an entry or claim for drawback is extended under subsection (b) or suspended as required by statute or court order, an entry or claim for drawback not liquidated within 1 year from the date of entry or claim shall be deemed liquidated at the drawback amount asserted by the claimant or claim. Notwithstanding section 1500(e) of this title, notice of liquidation need not be given of an entry deemed liquidated.
>
> (B) Unliquidated imports
>
> An entry or claim for drawback whose designated or identified import entries have not been liquidated and become final within the 1-year period described in subparagraph (A), or within the 1-year period described in subparagraph (C), shall be deemed liquidated upon the deposit of estimated duties on the unliquidated imported merchandise, and upon the filing with the Customs Service of a written request for the liquidation of the drawback entry or claim. Such a request must include a waiver of any right to

payment or refund under other provisions of law. The Secretary of the Treasury shall prescribe any necessary regulations for the purpose of administering this subparagraph.

(C) Exception

An entry or claim for drawback filed before December 3, 2004, the liquidation of which is not final as of December 3, 2004, shall be deemed liquidated on the date that is 1 year after December 3, 2004, at the drawback amount asserted by the claimant at the time of the entry or claim.

As indicated in subsection (B), the liquidation of an entry will become final. Generally, liquidation of an entry becomes final 180 days after the date that it liquidates, unless a protest is filed, as per the terms of 19 U.S.C. §§ 1514(a) and (c). Section 1514(a) states as follows:

(a) Finality of decisions; return of papers

Except as provided in subsection (b) of this section, section 1501 of this title (relating to voluntary reliquidations), section 1516 of this title (relating to petitions by domestic interested parties), section 1520 of this title (relating to refunds), and section 6501 of Title 26 (but only with respect to taxes imposed under chapters 51 and 52 of such title), any clerical error, mistake of fact, or other inadvertence, whether or not resulting from or contained in an electronic transmission, adverse to the importer, in any entry, liquidation, or reliquidation, and, decisions of the Customs Service, including the legality of all orders and findings entering into the same, as to—

(1) the appraised value of merchandise;

(2) the classification and rate and amount of duties chargeable;

(3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;

(4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title;

(5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof,

14

including the liquidation of an entry, pursuant to either section
1500 of this title or section 1504 of this title;

(6) the refusal to pay a claim for drawback; or

(7) the refusal to reliquidate an entry under subsection (d) of
    section 1520 of this title;

shall be final and conclusive upon all persons (including the United
States and any officer thereof) unless a protest is filed in
accordance with this section, or unless a civil action contesting the
denial of a protest, in whole or in part, is commenced in the United
States Court of International Trade in accordance with chapter 169
of Title 28 within the time prescribed by section 2636 of that title.
When a judgment or order of the United States Court of
International Trade has become final, the papers transmitted shall
be returned, together with a copy of the judgment or order to the
Customs Service, which shall take action accordingly.

Relevant here, 19 U.S.C. § 1514(c)(3)(A) provides as follows: "A protest of a decision, order, or

finding described in subsection (a) shall be filed with the Customs Service within 180 days after

but not before—(A) date of liquidation or reliquidation… ."

As discussed in the next sections, STL's drawback claim did not deem liquidate by

operation of 19 U.S.C. § 1504(a)(2) because the liquidation of some of the underlying import

entries did not become final within one year of the date that STL's drawback claim was filed,

and STL did not trigger a deemed liquidation under subsection (B).

**B.  Overview of the Legal Framework of 19 U.S.C. § 1504(a)(2)**

This action is not the first before the Court to parse the applicability and workings of the

subparagraphs in 19 U.S.C. § 1504(a)(2).  *Ford* centered on whether the plaintiff's drawback

claims, all filed before December 3, 2004, deem liquidated by operation of subparagraph (C) (not

at issue here), as the Court ultimately held, or did not deem liquidate at all, as the Government

unsuccessfully maintained.  44 F. Supp. 3d at 1330, 1332.

15

In *Ford*, the Court provided an overview of the structure and operation of 19 U.S.C.

§ 1504(a)(2).  Beginning with subparagraph (A), the Court stated that "the focus of subparagraph

(A) is on drawback entries or claims that are (in Customs' shorthand) 'workable'—*i.e.*, drawback

entries or claims where the liquidation of the underlying import entries has become final."  44 F.

Supp. 3d at 1343; *see also id*. at 1335 ("In agency parlance, Customs considers a drawback claim

to be 'workable' (*i.e.*, ready for liquidation) when all of the import entries that underlie that

drawback claim have been liquidated and those liquidations have become final.").

The Court further explained that "{t}he general rule set forth in subparagraph (A) also is

not applicable if subparagraph (B) or subparagraph (C) applies.  *See* 19 U.S.C. § 1504(a)(2)(A).

As discussed in greater detail below, the general focus of subparagraph (B) is drawback entries

or claims where the underlying import entries have not yet been liquidated and become final."

*Ford*, 44 F. Supp. 3d at 1343.

The Court then spelled out the fundamentals of subparagraph (B) as follows:

> In general, subparagraph (B) of the statute (captioned
> "Unliquidated imports") operates to give parties the option of
> having their so-called "non-workable" drawback entries and claims
> deemed liquidated, notwithstanding underlying import entries that
> are unliquidated and not yet final, provided that a party "deposit[s]
> ... estimated duties on the unliquidated imported merchandise" and
> files with Customs "a written request for the liquidation of the
> drawback entry or claim."  19 U.S.C. § 1504(a)(2)(B).

*Ford*, 44 F. Supp. 3d at 1343-44.  Thus, the Court explained that

> Subparagraph (B) applies generally to drawback entries and claims
> where one or more of the import entries that underlie the drawback
> entry or claim "have not been liquidated and become final within
> the 1–year period described in subparagraph (A)" (*i.e.*, "within 1
> year from the date of the [drawback] entry or claim") or "within
> the 1–year period described in subparagraph (C)" (*i.e.*, within the
> one-year period preceding December 3, 2005.  19 U.S.C. §
> 1504(a)(2)(A)-(C).

16

*Id*. at 1344.

Taken together, the *Ford* Court helpfully explained that subparagraph (A) of 19 U.S.C.

§ 1504(a)(2) pertains to so-called "workable" drawback claims, in which the underlying import

entries have all liquidated <u>and</u> become final.  In contrast, "non-workable" drawback claims, in

which all of the underlying import entries have not yet been liquidated and become final, are the

province of subparagraph (B).

More recently, *Performance Additives* involved a nearly identical issue to that of the

instant action.  In *Performance Additives*, the Court reiterated that "drawback claims whose

import entries have not been liquidated <u>and become final</u> within one year of the filing of the

drawback claim are excepted from the general deemed liquidated drawback provision" of

subparagraph (A).  705 F. Supp. 3d at 1394 (emphasis in original).   Because that plaintiff's

drawback claim covered import entries whose liquidations had not become final within a year of

the filing of the claim, and because the plaintiff "did not follow the procedure outlined in

subparagraph (B) to force liquidation of its drawback claim," the Court held that that the plaintiff

was not entitled to drawback on the claim.  *Id*. at 1395.

### C.  STL's Drawback Claim Did Not Deem Liquidate Under Section 1504(a)(2)

"As in any statutory construction case, '[w]e start, of course, with the statutory text,' and

proceed from the understanding that '[u]nless otherwise defined, statutory terms are generally

interpreted in accordance with their ordinary meaning.'"  *Sebelius v. Cloer*, 569 U.S. 369, 376

(2013) (*quoting BP America Production Co. v. Burton*, 549 U.S. 84, 91 (2006)).  "We reiterate

that 'when [a] statute's language is plain, the sole function of the courts—at least where the

disposition required by the text is not absurd—is to enforce it according to its terms.'"  *Id*. at 381

(*quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)) (additional internal quotation marks omitted).

As expressly set forth in the statute (19 U.S.C. § 1504(a)(2)), subparagraph (B), not subparagraph (A), governs claims for drawback whose designated import entries have not been liquidated and become final within the one-year period after the claim is filed.  19 U.S.C. § 1504(a)(2)(A) ("In general.  Except as provided in subparagraph (B) or (C)…").  By its terms, subparagraph (A) does not apply to claims "as provided in subparagraph (B)," and subparagraph (B) provides for "claim{s} for drawback whose designated or identified import entries have not been liquidated and become final within the 1-year period described in subparagraph (A)" [that is, "within 1 year from the date of entry or claim"].  19 U.S.C. § 1504(a)(2)(A)-(B).  Thus, only "19 U.S.C. § 1504(a)(2)(B) governs the liquidation of drawback claims whose import entries have not 'been liquidated and become final' within the one-year period described in subparagraph (A)."  *Performance Additives*, 705 F. Supp. 3d at 1391; *see Ford*, 44 F. Supp. 3d at 1344 ("Subparagraph (B) applies generally to drawback entries and claims where one or more of the import entries that underlie the drawback entry or claim 'have not been liquidated and become final within the 1–year period described in subparagraph (A)' (*i.e.,* 'within 1 year from the date of the [drawback] entry or claim')").

As the statute directs, if CBP does not liquidate a drawback claim covering import entries that have liquidated and become final within a year of the claim being filed, then absent an extension or suspension of the claim, 19 U.S.C. § 1504(a)(2)(A) specifies that the claim shall be deemed liquidated at the drawback amount asserted by the claimant.  And, a year after a drawback claim is filed, 19 U.S.C. § 1504(a)(2)(B) provides claimants with the means to trigger a deemed liquidation of the drawback claim even if the underlying import entries have not

liquidated or if the liquidation of the entries has not become final.  Thus, there are two avenues for eligible unliquidated drawback claims to become deemed liquidated a year after their filing: on their own under subparagraph (A) for claims covering liquidated and final import entries, or by a claimant actively satisfying the conditions of subparagraph (B) for claims covering import entries that have not liquidated and become final within a year of the claim being filed.

Applying this statutory framework to the case at hand, STL's drawback claim could not be, and was not, deemed liquidated under subparagraph (A).  For a deemed liquidation under subparagraph (A) to have occurred, the liquidations of all 23 underlying import entries must have been final by February 15, 2020, *i.e.*, one year after the drawback claim was filed on February 15, 2019.  However, that did not happen, as the liquidation of at least one designated import entry did not become final until well after a year of the claim being filed, on April 8, 2020, *i.e.*, 180 days from October 11, 2019.  *See* Elmalis Decl., ¶¶ 4-5; *see also* 19 U.S.C. § 1514(a) (providing for the "finality of decisions"), § 1514(c)(3) (providing 180 days to protest a liquidation); *Performance Additives*, 705 F. Supp. 3d at 1395-96 ("19 U.S.C. § 1514 dictates that liquidations of import and drawback entries are final unless a protest is filed."; "Because the import entries underlying Drawback Claim 1 had not been liquidated and become final within one year of the filing of the drawback claim, subparagraph (A) did not apply.").

Nor did STL's claim deem liquidate in accordance with 19 U.S.C. § 1504(a)(2)(B).  "By its terms subparagraph (B) is available where a drawback claim's designated import entries have not been liquidated and become final within one year of the filing of the drawback claim." *Performance Additives*, 705 F. Supp. 3d at. 1394.  However, unlike subparagraph (A), in which drawback claims subject to the provision deem liquidate automatically as a matter of law a year after being filed, subparagraph (B) requires claimants to take active steps to trigger a deemed

19

liquidation.  The *Performance Additives* Court explained the application of subparagraph (B) and the particular steps to trigger a deemed liquidation under the provision as follows:

> Drawback may be based on estimated duties if the import entry has not been liquidated, or the liquidation has not become final (for various reasons, including a protest being filed, statutory suspension, or court order), and the drawback claimant and any other party responsible for the payment of duties each files a written request for payment of drawback, waiving any right to payment or refund under other provisions of law. 19 U.S.C. 1504(a)(2)(B); 19 C.F.R. § 190.81(b).

*Id*. at 1389-90.  The Court also explained that "…the availability of the elective subparagraph (B) procedure cannot arise until after the close of the one-year period following filing of the claim…"  *Id*. at 1397-98, fn. 12.  Because STL took no steps in accordance with subparagraph (B) to request from CBP a deemed liquidation of its drawback claim a year after it was filed (or at any point for that matter), the claim could not deem liquidate under the provision.  *See generally* Protest & Entry Papers, ECF No. 14-2.

Consequently, the subject drawback claim did not deem liquidate under either subparagraph (A) or (B).  As a result, STL is not entitled to the deemed liquidation rate it asserted in its claim, and CBP's liquidation of the claim at zero drawback was valid.

## CONCLUSION

For these reasons, we respectfully request that the Court grant our cross-motion for summary judgment, deny plaintiff's motion for summary judgment, enter judgment in our favor and dismiss this action.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY

Director

By:    /s/ Justin R. Miller
        JUSTIN R. MILLER
        Attorney-In-Charge
        International Trade Field Office

        /s/ Alexander Vanderweide

Of Counsel:          ALEXANDER VANDERWEIDE
EMMA L. TINER         Senior Trial Counsel
Office of the Assistant Chief Counsel    International Trade Field Office
International Trade Litigation      Department of Justice, Civil Division
U.S. Customs and Border Protection    Commercial Litigation Branch
                        26 Federal Plaza, Room 346
                        New York, New York 10278
                        (202) 598-0287
December 1, 2025       Attorneys for Defendant

21

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JENNIFER CHOE-GROVES, JUDGE

_____
                                       :
SCOTTSDALE TOBACCO, LLC,               :
                                       :
                    Plaintiff,         :
                                       :          Court No. 24-00022
              v.                       :
                                       :
UNITED STATES,                         :
                                       :
                    Defendant.         :
_____:

## <u>CERTIFICATE OF COMPLIANCE</u>

I, ALEXANDER VANDERWEIDE, a senior trial counsel in the Office of the Assistant

Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field

Office, who is responsible for the Government's December 1, 2025 cross-motion for summary

judgment and response in opposition to plaintiff's motion for summary judgment, relying upon

the word count feature of the word processing program used to prepare the brief, certifies that

this cross-motion and response complies with the word count limitation under the Court's

chambers procedures, and contains 6071 words.


                                        <u>/s/ Alexander Vanderweide</u>