UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| SCOTTSDALE TOBACCO, LLC, | : |
| | : |
| Plaintiff, | : |
| | : Court No. 24-00022 |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant. | : |

## DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

Of Counsel:                                 ALEXANDER VANDERWEIDE
EMMA L. TINER                          Senior Trial Counsel
Office of the Assistant Chief Counsel     International Trade Field Office
International Trade Litigation          Department of Justice, Civil Division
U.S. Customs and Border Protection     Commercial Litigation Branch
                                       26 Federal Plaza, Room 346
                                       New York, New York 10278
                                       (202) 598-0287
                                       Attorneys for Defendant

Dated: July 24, 2026

## TABLE OF CONTENTS

ARGUMENT ...........................................................................................................2

I.   PLAINTIFF FAILED TO PRODUCE DOCUMENTATION NEEDED TO SUPPORT
     ITS DRAWBACK CLAIM THAT CBP IS AUTHORIZED BY STATUTE AND
     REGULATION TO REQUEST AND VERIFY .........................................................2

II.  PLAINTIFF'S DRAWBACK CLAIM FAILS AS A MATTER OF LAW ...........................12

CONCLUSION......................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)............................................................................................ 12

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).........................................................................................12-13

*EchoStar Techs., L.L.C. v. United States*,
391 F. Supp. 3d 1316 (Ct. Int'l Trade 2019) .................................................. 3

*Ford Motor Co. v. United States*,
34 C.I.T. 1529 (2010)
*aff'd,* 676 F.3d 1954 (Fed. Cir. 2012) .............................................................. 13

*Graham Eng'g Corp. v. United States*,
465 F. Supp. 2d 1353 (Ct. Int'l Trade 2006)
*aff'd,* 510 F.3d 1385 (Fed. Cir. 2007) ............................................................... 3

*Harmoni Int'l Spice, Inc. v. United States*,
211 F. Supp. 3d 1298 (Ct. Int'l Trade 2017) ................................................... 9

*Int'l Light Metals v. United States*,
279 F.3d 999 (Fed. Cir. 2002)............................................................................ 3

*Johnston v. IVAC Corp.*,
885 F.2d 1574 (Fed. Cir. 1989)......................................................................... 13

*King Maker Mktg. Inc. v. United States*,
786 F. Supp. 3d 1349 (Ct. Int'l Trade 2025) .............................................5, 7, 9

*Performance Additives, LLC v. United States*
167 F.4th 1348 (Fed. Cir. 2026) ................................................................................. 2

*Shell Oil Co. v. United States*,
688 F.3d 1376 (Fed. Cir. 2012) .................................................................................. 2

*Sparks Belting Co. v. United States*,
715 F. Supp. 2d 1305 (Ct. Int'l Trade 2010) ........................................................... 13

*Torrington Co. v. United States*,
818 F. Supp. 1563 (Ct. Int'l Trade 1993) ................................................................. 7

*Toyota Motor Sales, U.S.A., Inc. v. United States*,
35 C.I.T. 1205 (Ct. Int'l Trade 2011) ............................................................. 3, 9, 10

*Guess?, Inc. v. United States*,
944 F.2d 855 (Fed. Cir. 1991) .................................................................................... 9

*Zojirushi Am. Corp. v. United States*,
180 F. Supp. 3d 1354 (Ct. Int'l Trade 2016) ........................................................... 7

## Statutes

19 U.S.C. § 81c(a) .................................................................................................. 5, 8

19 U.S.C. §§ 1313(j)(1) ......................................................................................... 4, 11

19 U.S.C. § 1313(j)(2) ......................................................................................*passim*

19 U.S.C. §§ 1313(j)(2)(B) ..................................................................................... 4, 8

19 U.S.C. § 1313(r) .................................................................................................... 6

19 U.S.C. § 1313(r)(1) ............................................................................................ 4, 8

19 U.S.C. § 1508 ........................................................................................................ 3

19 U.S.C. § 1508(a) ................................................................................................. 10

## Rule

USCIT Rule 56(c) ..................................................................................................... 12

## Regulations

19 C.F.R. § 101.1 ...................................................................................................... 7

ii

19 C.F.R. § 141.68 ................................................................................................................7

19 C.F.R. Part 146 ................................................................................................................4

19 C.F.R. § 146.22(a) ...........................................................................................................6

19 C.F.R. § 146.32 ...............................................................................................................6

19 C.F.R. § 146.32(a)(1) .......................................................................................................6

19 C.F.R. § 146.35(e) ...........................................................................................................6

19 C.F.R. § 146.43 ...............................................................................................................6

19 C.F.R. § 146.44(b) ...........................................................................................................6

19 C.F.R. § 190.2 ........................................................................................................3, 4, 10

19 C.F.R. § 190.32(a) ...........................................................................................................8

19 C.F.R. § 190.38(a) ....................................................................................................10, 11

19 C.F.R. § 190.38(b) ...................................................................................................3, 4, 10

19 C.F.R. § 190.52(b) .....................................................................................................3, 10

19 C.F.R. § 190.61 ..........................................................................................................3, 10

19 C.F.R. § 190.61(a) ...........................................................................................................11

iii

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JENNIFER CHOE-GROVES, JUDGE

_____

SCOTTSDALE TOBACCO, LLC,

                        Plaintiff,

           v.

UNITED STATES,

                      Defendant.

_____

:          Court No. 24-00022

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant, United States (the Government), respectfully submits this memorandum in reply to plaintiff's, Scottsdale Tobacco, LLC (STL), opposition (Pl. Opp., ECF No. 35) to our cross-motion for summary judgment.

In our cross-motion, ECF No. 34, we demonstrated that statutory and regulatory recordkeeping requirements of U.S. Customs and Border Protection (CBP) direct drawback claimants, like STL, to sufficiently document the basis for a drawback claim so that CBP can verify the claim. We explained that CBP could not verify STL's claim given the critical deficiencies in the documents provided by STL. As a result, we showed that STL has not perfected its drawback claim and, thus, has failed to demonstrate eligibility to receive drawback of Federal Excise Taxes purportedly paid on the cigarettes covered by the designated import entries for the subject claim. Consequently, CBP properly denied drawback on STL's claim.

STL's opposition to our cross-motion posits that it has *prima facie* satisfied its statutory and regulatory obligations for claiming drawback under 19 U.S.C. § 1313(j)(2), so that any issues CBP has with STL's proffered documentation, or any additional documents sought by

CBP, amount to the Government creating claim-eligibility requirements that do not exist in statute or regulation, and moreover, impermissibly ask the Court to weigh immaterial facts against plaintiff.

STL's contentions attempt to sidestep the legal dispute before the Court with respect to Count I[1] of STL's complaint on summary judgment, to wit, the scope of CBP's legal authority to request information and documents from claimants to verify the statutory and regulatory eligibility of a given drawback claim, and the consequence of a claimant's failure to provide such. STL asks the Court to construe CBP's authority as either nonexistent or exceedingly circumscribed in this instance, whereas we submit that CBP is empowered by statute and regulation to request and review all pertinent information and documents to confirm that STL has satisfied the statutory conditions for drawback eligibility. Where, as here, a claimant fails to comply (and even disputes its obligation to comply) with CBP's requests for information, CBP cannot meaningfully exercise its authority to verify the underlying drawback claim, and therefore, as a matter of law, the claim must be denied.

## **ARGUMENT**

I. **PLAINTIFF FAILED TO PRODUCE DOCUMENTATION NEEDED TO SUPPORT ITS DRAWBACK CLAIM THAT CBP IS AUTHORIZED BY STATUTE AND REGULATION TO REQUEST AND VERIFY**

In our cross-motion, we explained that "drawbacks are a privilege, not a right." *Shell Oil Co. v. United States*, 688 F.3d 1376, 1382 (Fed. Cir. 2012) (internal citations omitted). As such, "[b]ecause drawbacks are deemed a 'mere gratuity, proffered by the government,' it is

---

[1] As indicated in the parties' Joint Status Report, ECF No. 38, STL is moving forward with Count I of its complaint only, as STL's deemed liquidation claim in Count II has been foreclosed by the U.S. Court of Appeals for the Federal Circuit's decision in *Performance Additives, LLC v. United States*, 167 F.4th 1348 (Fed. Cir. 2026).

incumbent upon the applicant to take the 'preliminary steps and acts ... in accordance with [applicable] regulations' in order to establish their drawback claim." *Graham Eng'g Corp. v. United States*, 465 F. Supp. 2d 1353, 1357-58 (Ct. Int'l Trade 2006) (citations omitted), *aff'd*, 510 F.3d 1385 (Fed. Cir. 2007).  Therefore, the applicable drawback regulations, which "are within Customs' authority" are "mandatory, not merely directory, and compliance is a condition precedent to the right of recovery of drawback." *Id*. (cleaned up).  Accordingly, "CBP has the authority to deny drawback claims which fail to strictly adhere to the drawback filing requirements." *EchoStar Techs., L.L.C. v. United States*, 391 F. Supp. 3d 1316, 1320 (Ct. Int'l Trade 2019) (citing *Int'l Light Metals v. United States*, 279 F.3d 999, 1001 (Fed. Cir. 2002)).

Here, the "applicable drawback regulations," as outlined in our cross-motion, are 19 C.F.R. §§ 190.2, 190.38(b), 190.52(b), 190.61, all of which are further buttressed by the general recordkeeping requirements set forth in 19 U.S.C. § 1508.  Collectively, these regulations require a drawback claimant to maintain and produce records upon request to enable CBP to verify (§§ 190.2, 190.38(b), and 190.61) a drawback claim.  Where CBP determines, as here, that a claim requires additional information to prove drawback eligibility, CBP notifies the claim filer of what "additional evidence or information is required" to perfect[2] the claim, and it is incumbent on the claimant to comply (§ 190.52(b)).  Additionally, where designated merchandise is admitted to and withdrawn from a Foreign Trade Zone (FTZ) (as was the merchandise purportedly underpinning STL's drawback claim), FTZ-specific regulations detail the form, maintenance, and production of records so that CBP is able to track and trace all merchandise

---

[2] "Perfection refers to the submission of additional information in support of an otherwise completed drawback claim, usually at the request of Customs.  Thus, a party's submission of additional information to Customs is a 'perfection' when it supplements a completed drawback claim." *Toyota Motor Sales, U.S.A., Inc. v. United States*, 35 C.I.T. 1205, 1214 n.14 (Ct. Int'l Trade 2011).

admitted into, and withdrawn from, an FTZ.  *See generally* 19 C.F.R. Part 146 (discussed further below).  STL must comply with these requirements as well.

Furthermore, valid drawback claims made pursuant to 19 U.S.C. §§ 1313(j)(1) or (j)(2) (such as STL's claim) must cover drawback-eligible merchandise (§ 190.38(b)).  In order to determine and verify whether the designated merchandise is drawback-eligible, CBP may examine "*any and all records*, maintained by the claimant, or any party involved in the drawback process, which are required by the appropriate CBP officer to render a meaningful recommendation concerning the drawback claimant's conformity to the law and regulations and the determination of supportability, correctness, and validity of the specific claim or groups of claims being verified."  19 C.F.R. § 190.2 (emphasis added) (defining the term "verification" for drawback purposes).  Put another way, verification is how CBP determines that a drawback claim meets the legal standard for drawback eligibility, such as proving that the merchandise on which drawback is claimed was exported within the five-year statutory deadline from the date that duty-paid merchandise was imported.  *See* 19 U.S.C. §§ 1313(j)(2)(B), 1313(r)(1).

Notwithstanding these operative regulations and requirements, STL relies upon, as a purportedly sufficient showing of its eligibility for drawback, the existence of certain entered and exported cigarettes classified under the same 8-digit subheading of the Harmonized Tariff Schedule of the United States (HTSUS).  *See*, *e.g.*, Pl. Opp. at 8-9.  Yet, as discussed further below, the existence of certain entries of merchandise does not establish the date that the designated imported cigarettes were admitted into the FTZ, or that the cigarettes subsequently withdrawn from the FTZ and entered into the United States as type 06 consumption entries matched the cigarettes initially admitted into the FTZ.  Nor does proof of export alone show the origin, quantity, type, and condition of the substituted merchandise.  *See*, *e.g.*, Pl. Opp. at 8-9.

4

As documentary proof of its designated imports, STL does not dispute that it has provided incomplete CBP Form 214s (Application for Foreign-Trade Zone Admission and/or Status Designation), *see* Pl. Opp. at 15, 19, 20, which, if complete and accurate, would presumably identify the drawback-eligible merchandise at the time of its admission into the FTZ.  STL waves away the deficiencies in its CBP Form 214s by maintaining that the CBP Form 7501 (Entry Summary) "is the controlling, self-authenticating documentary evidence that establishes the nature, classification and quantity of the imported goods" underlying the drawback claim at issue.  Pl. Opp. at 20.  Likewise, STL dismisses CBP's request for records to document the withdrawal of the substitute merchandise from either STL's or another company's existing inventory so that the agency could confirm the accuracy of the information reported on the CBP Form 214s used to establish exportation (via admission into the FTZ).  *Id*. at 10.  Instead, STL contends that CBP's regulations do not explicitly require claimants to produce inventory records, and therefore, it had no obligation to do so.  STL's reading of the applicable regulations governing compliance with CBP's requests is incorrect.

As a threshold matter pertaining to the merchandise designated as the basis of the drawback claim, the deficiencies in STL's CBP Form 214s is no small matter, and cannot be disregarded.  Notably, STL's claim is predicated on merchandise admitted into an FTZ and merchandise withdrawn from the FTZ on the import side, and on the export side, substitute merchandise admitted into an FTZ.  "As a consequence, Customs regulations governing merchandise in an FTZ pertain even though the FTZ Act provides that such merchandise is not 'subject to the customs laws of the United States.'"  *King Maker Mktg. Inc. v. United States*, 786 F. Supp. 3d 1349, 1358 (Ct. Int'l Trade 2025) (citing 19 U.S.C. § 81c(a)).  As detailed below,

5

CBP's FTZ regulations specify that complete and accurate CBP Form 214s (not CBP Form 7501s) are required to document admission into an FTZ:

- 19 C.F.R. § 146.22(a): providing, in part, with respect to merchandise admitted into an FTZ, that "[a]ll merchandise, except domestic status merchandise for which no permit for admission is required under § 146.43, will be traceable to a Customs Form 214 and accompanying documentation;"

- 19 C.F.R. § 146.32(a)(1): providing, in part, with respect to applications and permits for admission into the FTZ, as follows: "***Application on CBP Form 214 and permit.*** Merchandise may be admitted into a zone only upon application on a uniquely and sequentially numbered CBP Form 214 ('Application for Foreign Trade Zone Admission and/or Status Designation') and the issuance of a permit by the port director" (emphasis in original);

- 19 C.F.R. § 146.35(e): providing, with respect to temporary deposit in an FTZ and incomplete documentation, as follows: "***Submission of CBP Form 214.*** A complete and accurate CBP Form 214 must be submitted, as provided in § 146.32, within 15 calendar days with no exceptions granted by the port director, or the merchandise will be placed in general order" (emphasis in original); and

- 19 C.F.R. § 146.44(b): providing, with respect to zone-restricted merchandise, as follows: "***Application.*** Application for zone-restricted status will be made on Customs Form 214" (emphasis in original).

As noted *supra* at p. 4, key statutory requirements for drawback eligibility are predicated on events that must occur within five years from the date of *importation, see* 19 U.S.C. §§ 1313(j)(2), 1313(r), and complete and accurate CBP Form 214s are needed to establish the date

6

of importation when drawback is claimed with respect to merchandise admitted into an FTZ.  In general, "[u]nder customs law, the date of importation is not the same concept as the date (or time) of entry."  *Zojirushi Am. Corp. v. United States*, 180 F. Supp. 3d 1354, 1359 n.2 (Ct. Int'l Trade 2016).  As defined by regulation,

> "Date of importation" means, in the case of merchandise imported otherwise than by vessel, the date on which the merchandise arrives within the Customs territory of the United States. In the case of merchandise imported by vessel, "date of importation" means the date on which the vessel arrives within the limits of a port in the United States with intent then and there to unlade such merchandise.

19 C.F.R. § 101.1.  Conversely, "date of entry" establishes the time at which "entry" occurs, which is "the process of filing documentation with Customs to allow Customs to determine whether the subject merchandise should be released from Customs' custody and, if so, what duties are due."  *Torrington Co. v. United States*, 818 F. Supp. 1563, 1573 (Ct. Int'l Trade 1993); *see also* 19 C.F.R §§ 101.1, 141.68.  "In the case of imports going through a FTZ, [entry] occurs when the merchandise leaves the FTZ and enters the U.S. Customs territory."  *Torrington*, 818 F. Supp. at 1573.

In *King Maker*, 786 F. Supp. 3d at 1356, the Court clarified the meaning of the phrase "date of importation" when drawback claims concern merchandise initially admitted into an FTZ.  The Court found that, in accordance with 19 C.F.R. § 101.1, "the 'date of importation' of the subject merchandise is the date on which that merchandise was unladen into the FTZ."  *Id*. The Court reasoned as follows:

> [M]erchandise in an FTZ has still been imported, even if it is outside of the customs territory of the United States. By entering the port and then traveling to an FTZ within or near that port, the merchandise has been brought into the United States from a foreign country and thereby imported. *See Cunard*, 262 U.S. at

7

> 122, 43 S.Ct. 504. Accordingly, the merchandise at issue here is classified properly as imported as of the date that it was admitted into the FTZ.

*Id*. Thus, the Court "decline[d] to define the 'date of importation' of the merchandise to be the date of entry in the case of goods admitted into an FTZ." *Id*. at 1358.

As such, by regulation, a complete CBP Form 214—and *not* a CBP Form 7501—specifically records the date of importation for merchandise admitted into an FTZ and provides a description of that merchandise. In contrast, the CBP Form 7501 will reflect the date that merchandise withdrawn from the FTZ is subsequently entered for consumption as a type 06 entry within the customs territory of the United States. *See* 19 U.S.C. § 81c(a) (clarifying that goods withdrawn from an FTZ are "sent into customs territory of the United States" because FTZs are legally deemed to be outside of customs territory). Accordingly, complete and accurate CBP Form 214s with supporting documentation—and not CBP Form 7501s—are needed to establish the date of importation for merchandise admitted to an FTZ.

Failure to provide CBP Form 214s, or providing the forms with incomplete descriptive information, prevents CBP from fulfilling its regulatory directive to verify the statutory prerequisites for a valid drawback claim based on merchandise admitted into an FTZ. For claims made pursuant to 19 U.S.C. § 1313(j)(2) (such as STL's claim), in addition to the requirement that the designated substituted merchandise must be exported or destroyed within five years from the date of importation of the designated merchandise on which duties were paid, 19 U.S.C. § 1313(j)(2)(B) and 19 C.F.R. § 190.32(a), *all* drawback claims must be completed (*i.e.*, properly filed) within five years of the date of importation of the designated merchandise. 19 U.S.C. § 1313(r)(1). This five-year timeframe is a statutory limitation on drawback eligibility.

To confirm compliance with this applicable law, CBP thus requires complete

8

documentation showing importation, admission into the FTZ, and entry of the designated merchandise—and STL's chosen form of "proof" here only substantiates the date of *entry*.[3] Accordingly, without complete and accurate CBP Form 214s, CBP is unable to verify the date of importation from which STL's five-year statutory deadline to complete exportation begins to run (and thus the date by which STL must have filed its drawback claim).  STL's failure, therefore, to document the date of importation and statutory timeframe prevents it from demonstrating compliance with a statutory prerequisite for drawback eligibility.  Because drawback is a "statutory privilege…due only when enumerated conditions are met," *Toyota Motor Sales,* 35 C.I.T. at 1221 (quoting *GUESS?, Inc. v. United States*, 944 F.2d 855, 858 (Fed. Cir. 1991)), STL has not established that it has satisfied all conditions necessary to receive that privilege.

Satisfying these conditions is not merely a matter of agency preference; it is mission critical.  CBP is charged with protecting the revenue.  *See, e.g.*, *Harmoni Int'l Spice, Inc. v. United States*, 211 F. Supp. 3d 1298, 1319 (Ct. Int'l Trade 2017).  CBP does so, in part, by ensuring that the statutory and regulatory conditions for drawback eligibility have been satisfied, which requires verifying the accuracy of information submitted to it when determining whether a particular claimant has satisfied these requirements.  CBP cannot simply overlook a claimant's failure to comply with its record requests; indeed, the risk to the revenue increases when a claimant is noncompliant with its record-keeping requirements.  CBP's statutory and regulatory authority to request and review relevant documentation is, therefore, not strictly limited to those

---

[3] Indeed, despite its argument that the CBP Form 7501s showing the date of entry are "controlling," STL acknowledged the import/entry date distinction (and the Court's recent decision in *King Maker*) in its opening brief, contending that the dates of importation for the designated merchandise are established by the CBP Form 214 Notices of Admission.  *See* Pl.'s Mot. Summary J., ECF No. 25, at 16.  Yet, STL now asks the Court to ignore the discrepancies and missing information from the very forms that it recognizes establish a key link in the documentary chain.

standard forms prepared and submitted by claimants, as STL intimates, *see* Pl. Opp. at 18-20, especially when those forms contain errors and omissions. *See* 19 C.F.R. §§ 190.2, 190.38(b), 190.52(b), 190.61; 19 U.S.C. § 1508(a). Rather, the legal framework governing CBP's review of drawback claims specifically authorizes—and requires—CBP to request records that claimants must maintain in the ordinary course of business before signing off on what may be a sizeable refund of duties and taxes.

Despite STL's protestations otherwise, Pl. Opp. at 10-12 and 18-20, such requests encompass inventory records. In *Toyota Motor Sales*, the Court stated that, in reference to the plaintiff's drawback claim covering unused merchandise exported to Canada, "if an importer maintains fungible inventories consisting of both drawback eligible and ineligible merchandise (e.g., domestically produced products), any merchandise subject to drawback may be identified by inventory accounting methods. Using these methods, a drawback claimant may establish that, based on its inventory records, dutiable merchandise must have been exported within three years of importation, as [then] required by § 1313(j)(1)," prior to the amendment of the statutory timeframe to five years. 35 C.I.T. at 1208.

Thus, inventory records may be determinative in identifying drawback-eligible merchandise. For section (j)(1) unused merchandise drawback claims, inventory records have proven dispositive when ascertaining whether the deadline for exportation has been satisfied. *See Toyota Motor Sales*, 35 C.I.T. at 1208. In the context of section (j)(2) substitution unused merchandise drawback claims, claimants are required to maintain records, including inventory records, that enable CBP to identify the imported merchandise designated as the basis for the claim, verify the importation of such merchandise, and verify the exportation of the merchandise on which drawback is claimed. 19 C.F.R. §§ 190.38(a)-(b). Far from imposing extra-statutory

or extra-regulatory conditions on drawback claims as STL maintains, Pl. Opp. at 17-20, CBP's request for, and review of, inventory records ensures that all required statutory predicates for a valid drawback claim have been satisfied.

Ultimately, all drawback "claims are subject to verification by CBP," 19 C.F.R. § 190.61(a), because all statutory and regulatory requirements must be satisfied for a claim to be eligible for drawback. Here, CBP sought STL's inventory records to verify the incomplete information that STL had provided and to determine whether STL had satisfied all conditions and requirements for drawback eligibility. The issue is not whether inventory records are necessarily factually dispositive of, or relevant to, every drawback claim, but whether CBP has the authority—and obligation—to verify eligibility for drawback whenever it reviews a claim, especially when claimants are as a matter of law required to maintain "all records . . . essential to establish compliance with the legal requirements of 19 U.S.C. 1313(j)(1) or (j)(2)." 19 C.F.R. § 190.38(a). A claimant's failure to maintain essential records, which impedes CBP from verifying drawback eligibility, signifies that the claimant may ultimately be unable to prove drawback eligibility. As explained in our cross-motion at 10-11, CBP could not confirm—based on the CBP Form 7501 and entry paperwork alone—that the entries of designated imported merchandise, in quantity and kind, matched what was initially imported and admitted into the FTZ. Inventory records were thus requested, but never produced, to verify this information.[4]

Also, as set forth in our cross-motion at 12-13, without inventory records, CBP is prevented from tracing the substituted (exported) merchandise from its purported U.S. origin to

---

[4] As detailed in our cross-motion at 9-11, CBP requested but was not provided with proof that the imported merchandise was ever received, which could have taken the form of documents showing delivery to STL or a designated customer and/or documents with the description and quantity of the imported cigarettes entered into inventory.

its admission into the FTZ.  CBP must be able to trace the designated substituted merchandise to ensure compliance with the applicable requirements pertaining to the eligibility of substituted unused merchandise, such as proving that the substituted merchandise was unused prior to exportation and that it was in the possession of the claimant.  CBP cannot meaningfully perform this compliance check if it cannot verify where the substituted merchandise originated from. Inventory records are thus needed to confirm the accuracy of the information reported on the CBP Form 214s that STL provided to establish exportation via the substitute merchandise's admission into the FTZ.  Indeed, export documents alone will not show the origin, quantity, type, and condition of the substituted merchandise, so inventory records are required to do so.  But none were provided.

## II.    PLAINTIFF'S DRAWBACK CLAIM FAILS AS A MATTER OF LAW

We reiterate that we are not asking the Court to weigh whether the documents that STL has produced in support of its claim are true or credible.  The records are what they are.  But the Court must consider the threshold issue of whether STL has proffered sufficient evidence to establish the basic elements of its claim.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).  It is as to the sufficiency of its evidence that STL's claim fails.

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

12

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *see also Johnston v. IVAC Corp.*, 885

F.2d 1574, 1577 (Fed. Cir. 1989) ("Summary judgment may be granted in favor of a defendant

on an ultimate issue of fact where the defendant carries its burden of 'pointing out to the district

court that there is an absence of evidence to support the nonmoving party's case.'") (*quoting*

*Celotex*, 477 U.S. at 325); *Sparks Belting Co. v. United States*, 715 F. Supp. 2d 1305, 1313 (Ct.

Int'l Trade 2010) ("Summary judgment must be entered against a party who fails to make a

showing sufficient to establish the existence of an essential element to its case."); *Ford Motor*

*Co. v. United States*, 34 C.I.T. 1529, 1531 (2010), *aff'd*, 676 F.3d 1054 (Fed. Cir. 2012)

("Additionally, where a party fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at

trial, summary judgment is mandated against that party.").

STL's failure to produce sufficient documents to establish its eligibility for drawback is

fatal to its claim as a matter of law.  CBP could not verify the claim's eligibility because STL

produced incomplete and deficient records.  Were the Court to step into the shoes of CBP and

review the same documents proffered by STL, we submit the result must be the same.  Indeed, if

CBP, or this Court (through a *de novo* review of plaintiff's claims), were to merely rubber-stamp

substitution drawback claims premised on the existence of imports (supported only by proof of

their entry date) and exports classifiable under the same 8-digit HTSUS subheading, as STL

proposes, CBP or the Court would run the risk of approving claims covering drawback-ineligible

merchandise.  Thus, to ensure that all prerequisites of STL's claim were satisfied, CBP requested

additional information and documentation from STL, which the agency is authorized by statute

and regulation to request and verify.  STL's failure to provide these records, at both the

administrative stage and during discovery in this action, prevented CBP from verifying all of the

13

claim's eligibility requirements for drawback.  As a matter of law, therefore, STL has not demonstrated compliance with the statutory prerequisites to receive drawback.

## CONCLUSION

For these reasons, we respectfully request that the Court grant our cross-motion for summary judgment and deny STL's motion for summary judgment.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:    /s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Alexander Vanderweide

Of Counsel:                            ALEXANDER VANDERWEIDE
EMMA L. TINER                          Senior Trial Counsel
Office of the Assistant Chief Counsel  International Trade Field Office
International Trade Litigation         Department of Justice, Civil Division
U.S. Customs and Border Protection     Commercial Litigation Branch
                                       26 Federal Plaza, Room 346
                                       New York, New York 10278
                                       (202) 598-0287
                                       Attorneys for Defendant

Dated: July 24, 2026

14

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. JENNIFER CHOE-GROVES, JUDGE

| | |
|---|---|
| SCOTTSDALE TOBACCO, LLC, | : |
| | : |
| Plaintiff, | : |
| | : Court No. 24-00022 |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant. | : |

## CERTIFICATE OF COMPLIANCE PURSUANT TO USCIT STANDARD CHAMBER PROCEDURE 2(B)

I, Alexander Vanderweide, a Senior Trial Counsel in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the foregoing reply brief, relying upon the word count feature of the word processing program used to prepare this brief, certify that this reply brief complies with the type-volume limitation under USCIT Standard Chamber Procedure 2(B) and contains 4188 words.

/s/ Alexander Vanderweide